## ESTES *v.* MERRILL.

### Opinion delivered December 13, 1915.

1.  HUSBAND AND WIFE—SUBSEQUENT BIGAMOUS MARRIAGE OF WIFE—DOWER.—When a man and woman are legally married, the woman continues to be the man's wife, notwithstanding she subsequently contracts a bigamous marriage with another man during her husband's life, and upon the death of her lawful husband she is entitled to the widow's rights in his estate.

2.  CONFLICT OF LAWS—MARRIAGES—VALIDITY.—Marriages contracted outside this State, which are valid by the laws of the State or country in which the same are consummated and where the parties then actually reside, are valid in this State.

3.  CONFLICT OF LAWS—MARRIAGE OUTSIDE THE STATE—VALIDITY—COMMON LAW MARRIAGE—JUDICIAL NOTICE.—The courts of this State take judicial knowledge of the laws of other States, and that a com-

mon law marriage was valid in the State of Ohio, when the appellee assumed the relation, and lived with her husband there.

4.  MARRIAGE—VALIDITY—BURDEN OF PROOF.—The burden of proof is upon the person attacking the validity of a marriage.

5.  MARRIAGE—VALIDITY—SUFFICIENCY OF EVIDENCE TO OVERTHROW.—A. was married to B. in 1878, and after a separation A. attempted to secure a divorce, which both she and B. thought she had secured. Thereafter A. intermarried with one M., living with him thirty years, and rearing a family of children. B. then died, leaving property, and in order to share as widow in his estate, A. attempted to show that her purported divorce from B. was never in fact secured, and that her marriage to M. was therefore invalid. *Held*, the burden was on A. to show that her marriage to M. was invalid, and that under the evidence adduced she had failed to discharge that burden.

Appeal from Garland Chancery Court; *Jethro P. Henderson*, Chancellor; reversed.

STATEMENT BY THE COURT.

Elizabeth Merrill brought this suit for the widow's interest and dower in the estate of John D. Condon, deceased.

The complaint alleges that she was married to said John D. Condon in 1878, in Columbus, Ohio, and that he died on the first day of September, 1910, leaving no children or other descendants or heirs or next of kin; and the owner of certain described lands in Hot Springs, Arkansas, and that he had been the owner and seized and possessed of the certain other lands and had conveyed them to the different defendants claiming to own them, without her having joined in the conveyances and relinquished her dower interest in the lands.

Separate answers were filed denying that appellee was the widow of John D. Condon, deceased, and entitled to any interest in his estate as such and all the other allegations of the complaint.

It was also alleged that said deceased was divorced from the plaintiff before the conveyance of the said land and that in the year 1891 she had intermarried with one Merrill, with whom she continued to live and cohabit as husband and wife and by whom she had four children, two of whom were adults, and that she was at

the time of the transfer of said property by the said John D. Condon, the wife of the said Merrill and has no right, title or interest to the widow's share, or in any other manner, to any of the property of which the said John D. Condon died seized and possessed, or which he may have sold during his life time subsequent to the time of obtaining said decree of divorce, and that said deceased in clearing up the title to certain of his property sold in the city of Hot Springs, had made affidavits that he was a single and unmarried man and his conveyances of all the property in controversy recited such fact.

There were also allegations setting up fraud and estoppel as defenses to the suit.

The testimony shows that Elizabeth Merrill, nee Sharp, was married to John D. Condon in Columbus, Ohio, in 1878; that they went to Hamilton, Ohio and lived there about 11 months and then went to Lexington, Ky., where they lived about two years. Condon went from there to the west and she returned to Columbus, Ohio, and never afterwards lived with him as his wife. Two children were born of this marriage; one died in infancy and the girl was killed in a railroad accident in 1903, never having married and without children.

Condon came to Hot Springs, Arkansas, where he acquired and conveyed the lands in controversy and was reputed to be a single and unmarried man and his conveyances of the property recited that such was the fact.

Some of the witnesses testified that he went back to Columbus, Ohio, in February or March, in. '90 or '91 and after returning seemed greatly elated over the fact that a divorce had been obtained and stated that "he was a free man and straight." The witnesses stated that he said his wife had married or could marry again any time she wanted to.

A witness in the abstract business introduced in evidence the affidavit of J. D. Condon, reciting that he was a citizen of Hot Springs, Arkansas, on the 24th day of March, 1903, when he executed a deed, conveying certain lots, designating them, and "I signed and acknowledged

this deed on March 24, 1903, and was at that time an unmarried man.''

The appellee testified to the fact of the marriage and separation as already stated, giving no reason for the parting, and that Condon died September 2, 1910, at Waukesha, Wis. That she saw him twice after the separation in Lexington, Ky., first, four or five years thereafter in Columbus, Ohio, and that he was there again in January following June 7, 1903, when their daughter Mattie was killed.

There were copies of two letters which purported to have been written, one by his physician for, but not claimed to have been signed by him, and the other by him to appellee, relative to the disposition of some of his estate and containing (the one by the physician) the statement ''no matter what happens, you are still my wife as I never got divorced and never married again, and what I have is yours by law and I want you and the children to have it.'' The copy of the letter which she stated was signed by J. D. Condon, recited that he had sent by express two diamond rings and $35, five for each of her girls and $25 for herself. The letter purporting to be written by his physician was dated August 17, 1910, the other was not dated, but she stated the latter part of August she received the express package with the rings and money.

Both the letters were addressed to Mrs. Elizabeth Merrill, and signed ''Yours very truly,'' and ''Truly yours,'' with no other indication of the relationship of the parties except as already quoted. Upon being asked whether or not she had obtained a divorce from John D. Condon, she answered, ''Well, I thought I did.'' She stated that she went to Lexington, Kentucky after they had been separated for about three years to get a divorce, having been told that she could get it there; went to a lawyer's office, whose name she did not remember and applied for a divorce, telling him she wanted it on the ground of wilful absence. That he told her she would have to pay $10 down and he would see that she got a

divorce. That she paid the $10 and he drew up some kind of paper that she signed in his office and which was not returned to her, and further as follows:

"Q. After you signed that paper what next did you do?

A. Well, I just waited. He told me he would have to advertise and I just waited. He told me to come in a certain day.

Q. Well, did you go in on that certain day?

A. Yes.

Q. When you went in that day, who was in his office?

A. Some older man than him.

Q. And when you went into the office, what occurred then?

A. A young man just talked with the older man and the younger man turned to me and said "Miss Sharp, your divorce is granted, there was no objection." I do not think he gave me any certificate showing that I had a divorce, but he gave me a receipt for $25. During these divorce proceedings I was not in any court room, and was only in an office like this one. I was sworn. The men there made me raise my hand. I suppose it was a Notary Public, but I do not know, and do not know whether it was the first time or the last time that I was sworn. I gave no testimony. I made no other effort to procure a divorce."

On cross-examination she said that she first heard of Condon at Hot Springs after their separation and that she applied for a divorce about three years after she went back to Columbus and heard from him after applying for a divorce and that when he saw her he said he did not know that she applied for a divorce. And to the question "Did you ever tell him that you had gotten a divorce, answered, "I told him the last time I saw him. That was after Mattie was killed in 1903."

She assumed the marriage relation with Merrill in 1888 in Ohio and has lived continually with him as his wife ever since and had four children by him and they

had a marriage ceremony pronounced after John Condon's death. She stated also that she was living with Merrill as his wife when Condon visited her at Columbus, and answered further as follows:

Q. Was it not a fact that John D. Condon knew of the relationship between you and Mr. Merrill?

A. Yes sir, he did.

Q. Did you not at that time tell J. D. Condon that you had obtained a divorce and that Mr. Merrill was your husband?

A. I did tell him but he said I did right to do as I did.

Q. You told him you had obtained a divorce, did you not?

A. I did.

She stated also that she did not apply for a divorce to enable her to marry Mr. Merrill and did not assume marital relations with him until in the fall of the year after she made application for the divorce.

The court found that the plaintiff was the wife of Condon at the time of the conveyances to certain of the defendants in which she did not join and that she was entitled to the widow's interest and dower and decreed accordingly and this appeal is prosecuted from the decree.

*M. S. Cobb* and *A. J. Murphy,* for appellant.

1. A common law marriage, in Ohio, to Merrill was established. 26 Cyc. 837; 12 Oh. St. 553.

2. In order to recover, appellee must show that no divorce was ever had from her first husband. She has failed. Every presumption is in favor of the validity of her marriage to Merrill. This presumption has not been overcome. She has utterly failed to prove that her marriage to Merrill was void. The burden was upon her and she has failed. 26 Cyc. 877; 96 Am. St. 322; 127 Ill. 379; 147 Ill. 215; 35 N. E. 526; 82 Ark. 76; 88 *Id.* 135; 25 Mo. 259; 55 Am. St. 883; 67 Ark. 278; Bish. Mar. & Div. § § 956-7; 22 Ark. 89; 95 Ia. 611; 64

N. W. 790; 12 Am. St. 458-9, 453, 459 and many others. The case should be reversed and dismissed.

*A. Curl,* for appellee.

1. Appellee was still the wife of Condon. Her marriage with Merrill was unlawful and void. 5 Ark. 608-613; 31 *Id.* 576; 37 *Id.* 344; 11 *Id.* 82-94; 31 *Id.* 678. The findings of the chancellor are fully sustained by the evidence and the decree should be affirmed.

KIRBY, J. (after stating the facts.) (1) The law is well settled in this State that when a man and woman are legally married the woman continues to be the man's wife, notwithstanding she subsequently contracts a bigamous marriage with another man during his life, and upon the death of her lawful husband is entitled to the widow's rights in his estate. *Evatt* v. *Miller,* 114 Ark. 84.

(2-3) It is likewise settled law that marriages contracted without the State, which are valid by the laws of the State or country in which the same are consummated, and the parties then actually resided, are valid in this State (Kirby's Digest, Sec. 5177) and our courts take judicial knowledge of the laws of other States, and that a common law marriage was valid in the State of Ohio when appellee assumed the marital relation and lived with her husband Merrill there. *Carmichael* v. *State,* 12 Ohio St. 553; 26 Cyc. 837; *Darling* v. *Dent,* 82 Ark. 76.

(4) The undisputed testimony of the appellee and others relative to her assuming the marital relation with Merrill and living with him as his wife in Ohio where they were regarded as husband and wife and reared a family of children, established a valid common law marriage, unless the parties could not assume such relation because of some legal disability, as having a lawful husband or wife undivorced at the time. Of course since appellee was legally married to the deceased, she would be entitled to the widow's rights in his estate, notwithstanding her relation with said Merrill, if her marriage to him was not legal or bigamous. Her marriage to him was shown by the undisputed testimony however and

Cyc. says: "If a marriage in fact is established by evidence or admission, it is presumed to be regular and valid, and the burden of adducing evidence to the contrary rests on the party who attacks it." 26 Cyc. 877; also *Halbrook* v. *State,* 34 Ark. 518; *Cash* v. *Cash,* 67 Ark. 281.

The burden of proof is upon the person attacking the validity of a marriage.

Bishop says: "Every intendment of the law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proof, the law raises a strong presumption of its legality; not only casting the burden of the proof on the party objecting, but requiring him throughout, and in every particular, plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void. So that it cannot be applied like ordinary questions of fact, which are independent of this sort of presumption." 1 Bishop, Marriage and Divorce, Sec. 956; *Halbrook* v. *State,* 34 Ark. 518.

So strong is this presumption and the law is so positive in requiring the party who asserts the illegality of a marriage to take the burden of proving it, that such requirement obtains even though it involves the proving of a negative, and although it is shown that one of the parties had contracted a previous marriage, and the existence of the wife or husband of the former marriage at the time of the second marriage is established by proof, it is not sufficient to overcome the presumption of the validity of the second marriage, the law presuming rather that the first marriage has been dissolved by divorce, in order to sustain the second marriage. *Schmisseur* v. *Beatrie,* 147 Ill. 210; *Pittinger* v. *Pittinger,* 89 Am. St. Rep. 193, and authorities cited in note; *Potter* v. *Clapp,* 96 Am. St. 322; *Boulden* v. *McIntire,* 12 Am. St. Rep. 458; *Smith* v. *Fuller,* 16 L. R. A. (N. S.) 98, and authorities in note, page 106; *Howton* v. *Gilpin,* 24 Ky. Law Rep. 630, 69 S. W. 766.

(5) In order for appellee to succeed in this suit, it was necessary for her to prove the invalidity of her marriage to Merrill, and in attempting to do so she stated that she employed a lawyer to procure a divorce from Condon, the deceased, and paid him his fee; that she signed certain papers after being sworn, and was later told by her attorney that there had been no objection made, and the divorce had been granted; that she then married the second husband in the belief that she had procured a divorce and afterwards when visited by the first husband, Condon, while she was living with her second husband, told him that she had procured a divorce from him and had his approval of her conduct, stating she had done right in so doing. She lived with her second husband as his wife for the past thirty years and then challenged the validity of her last marriage to enjoy the estate left by her first husband.

She adduced no other proof of the invalidity thereof than her own statements, except the testimony of the clerk of the divorce court in the county in which Lexington, Ky., is situated, that he was unable to find after a careful examination of the records, any record of a divorce obtained in a suit of Elizabeth Condon v. John Condon, during the years about the time she stated she made application for, and understood a divorce had been granted to her.

The copy of the letter which she stated was written by her husband's physician for him, containing a statement that he "had not procured a divorce etc.", was incompetent and entitled to no weight whatever, the letter not having been shown to have been signed by him nor written by his authority and was the veriest hearsay. Her own statement of her actions in attempting to procure a divorce well nigh established the fact that she had done so in accordance with her statement to her former husband that she had obtained a divorce, and her subsequent conduct in marrying Merrill, and it is barely overcome by the statement of the clerk of the divorce court at Lexington, Ky., since it was not defi-

nitely shown that her suit for divorce had been brought in that county and there is no proof whatever that her first husband had not obtained a divorce from her. His conduct in the making of deeds, and affidavits reciting that he was a single man and his statements that such was the fact to the people among whom he lived, with the testimony that he seemed elated upon his return from one visit to the East and stated that he was now divorced and was "free and straight," all indicated that he had, and supported the presumption to that effect.

The proof is not sufficient to overturn the second marriage, which is presumed to be legal.

The finding of the chancellor was not warranted by the testimony and the decree is reversed and the cause remanded with directions to dismiss the complaint for want of equity.