LATHAN v. LATHAN.

Opinion delivered January 9, 1928.

1. MARRIAGE—PRESUMPTION AS TO VALIDITY OF SECOND MARRIAGE.— Where a second marriage is established in form according to law, the presumption arises in favor of its validity as against the former marriage, though the former husband or wife is living at the time.

2.  MARRIAGE—PRESUMPTION OF VALIDITY OF SECOND MARRIAGE.—The presumption of the validity of a second marriage as against the former marriage is not overcome by the presumption in favor of the continuance of the first marital relation, coupled with the testimony of the former spouse that she has not obtained a divorce, and has no information as to whether the other spouse has obtained a divorce, and the testimony of the clerk of the divorce court where the husband had some time lived that no divorce had been granted him therein.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*Sheffield & Coates,* for appellant.

*W. G. Dinning,* for appellee.

McHANEY, J.  Appellant and appellee both claim to be the lawful widow of Charlie Lathan, deceased, who died intestate and without issue in Phillips County, Arkansas, in the month of February, 1926.  Appellant was lawfully married to said Charlie Lathan on December 24, 1896, at Eupora, Mississippi, and thereafter lived with him as his wife there, and at Cleveland, Mississippi, until in 1909, at which time Charlie Lathan left appellant and removed to Phillips County, Arkansas.  About two years later, appellee, who was also a resident of Cleveland, Mississippi removed from thence to Phillips County, and on July 31, 1913, she was married to Charlie Lathan. On June 8, 1917, said Charlie Lathan and appellee purchased the land described in the complaint which is sought to be partitioned in this action, taking the title thereto in their joint names, so as to create an estate by the entirety in them, if appellee was the lawful wife.  Appellant brought this action to partition said land, charging that Charlie Lathan and appellee owned said land as tenants in common, and that she had acquired title to an undivided one-half interest therein from the collateral heirs of Charlie Lathan, and was therefore entitled to an undivided one-half interest therein.  The court made a general finding of fact for appellee, entered a decree dismissing the complaint for want of equity, and quieted and confirmed the title to the property in appellee, from which is this appeal.

Appellant has correctly stated the question for our determination as follows: "The appeal in this case raises the one question upon which the cause of the appellant must stand or fall. Was she the legal widow of the deceased, Charlie Lathan?" Let it be conceded, as heretofore stated, that appellant was lawfully married to Charlie Lathan in 1896. It is also true that he married appellee in 1913, four years after he had separated from his first wife. Appellant testified that she had not procured a divorce from her husband, and that, to her knowledge, no divorce had been granted him, although, according to Mr. J. M. Walker, a member of the Helena bar, she told him that she had been married to a man in St. Louis, evidently subsequently to her separation from Charlie Lathan. No divorce was procured by Charlie Lathan in Phillips County, as the records of the clerk of the chancery court fail to show it. Appellee testified that she knew appellant had been married to Charlie Lathan, but that he told her, prior to her marriage to him, that he had been divorced. Under this state of facts, what are the rights of the parties, and what is the law applicable thereto? Let us review some of the decisions of this court bearing upon this question, as well as decisions from other states.

In the case of *Holbrook* v. *State,* 34 Ark. 518, 36 Am. Rep. 17, this court said:

"There was also a presumption that appellant's marriage with Jane Honeycutt was lawful, innocent, and not criminal. It is supposed that a man will not incur the guilt of felony and danger which attends it by marrying another woman during the life of one to whom he has previously been lawfully married."

And again, in the case of *Cash* v. *Cash,* 67 Ark. 278, 54 S. W. 744, this court said:

"It is in evidence that she married in due form of law John H. Cash. The court properly held that the presumption of law is that this was a legal marriage, and that the burden to show its illegality was upon the party attacking the validity of the marriage on the ground of

illegality to show it by evidence. It is not presumed that the appellee violated the law. The presumption that the marriage was legal is stronger than the presumption that Miles Hankins, to whom she was first married, was living at the time of the second marriage. Her marriage is presumed to have been 'lawful, innocent, and not criminal'.''

Again, in the more recent case of *Estes* v. *Merrill*, 121 Ark. 361, 181 S. W. 136, the court goes a little further and states the law as follows, on the question of the presumption:

''So strong is the presumption and the law is so positive in requiring the party who asserts the illegality of a marriage to take the burden of proving it, that such requirement obtains, even though it involves the proving of a negative, and although it is shown that one of the parties had contracted a previous marriage, and the existence of the wife or husband of the former marriage at the time of the second marriage is established by proof, it is not sufficient to overcome the presumption of the validity of the second marriage, the law presuming rather that the first marriage has been dissolved by divorce, in order to sustain the second marriage.''

And in the still later case, *McGaugh* v. *Mathis*, 131 Ark. 221, 198 S. W. 1147, the court quoted the above from *Estes* v. *Merrill* with approval, and again adhered to the principle therein stated.

In the case of *Brotherhood of Railroad Trainmen* v. *Meredith*, 146 Ark. 140, 225 S. W. 337, this court again approved the above citations in the following language:

''Counsel for appellee cite numerous cases of other courts, as well as decisions of this court, to the effect that there is a presumption of validity in favor of any marriage which is shown to have been solemnized, and that the burden of proving its invalidity rests upon him who questions its validity, and that this is true, notwithstanding it requires proof of a negative. * * *

''Counsel for appellee correctly state the presumption of law, and the testimony in the case would have sup-

ported a verdict to the effect that this presumption had not been overcome; but, as the verdict was directed against the company, the question is whether the jury might not have found otherwise.''

This case was reversed because not submitted to the jury. On the second appeal of this case, *Brotherhood of Railroad Trainmen* v. *Fountaine,* 155 Ark. 578, 245 S. W. 17, this presumption was again sustained.

To the same effect see Bishop on Marriage, Divorce and Separation, §§ 77, 956, 958. In the case of *Chancery* v. *Whinney,* 47 Okla. 276, 147 p. 1037, the court said:

''Marriage will not be destroyed on presumption. The law is astute to preserve the sanctity of the marriage relation, and legitimacy of children and stability of descent and distribution, and therefore presumes innocence and virtue, in the absence of proof to the contrary. (Citing cases). In *Haile* v. *Haile,* 40 Okla. 101, 135 Pac. 1143, the plaintiff testified that she had never obtained a divorce from her first husband, but did not testify as to whether he obtained a divorce from her and that by such divorce their marriage relations were dissolved. Then the defendant introduced depositions of the clerks of the circuit courts of three counties in Illinois and one county in Texas, in which counties the plaintiff's former husband had at different times resided. It was said by the court that the evidence did not establish that the counties named in the depositions were the only counties in which said former husband resided during said time, and that said courts were the only courts that had jurisdiction to grant him a divorce. It was further said that the stability of descent and distribution, the rendering illegitimate of innocent children upon such facts as were presented by the record in that case, established the wisdom of the presumption that sustains the validity of a marriage contract under the forms of law; and it was held that the trial court did not err in his finding to the effect that the presumption had not been overcome.''

The case of *Pittinger* v. *Pittinger,* 28 Col. 308, 64 Pac. 195, 89 Am. St. Rep. 193, is a leading case, and is in

point with the case at bar. In the course of this opinion the court said:

"Appellee having been named as the beneficiary in the original certificates, and designated therein as the wife of deceased, she is presumed to be a legal one, and bear the relation to the insured designated (*Knights of Honor* v. *Davis*, 26 Col. 252, 58 Pac. 595), so that, to the extent that the rights of appellant are dependent upon the fact that appellee was not the wife of deceased, the burden of proof rested with her to establish this issue by a preponderance of the evidence. On this subject the first wife testifies to the effect that she was married to deceased in 1876. She took no steps herself to obtain a divorce, and states that no papers for that purpose were ever served upon her. This is the only testimony tending to establish that the marriage relation between herself and deceased was not dissolved, as the evidence of the other witnesses on behalf of appellant on this subject is immaterial. As against this testimony we have the undisputed evidence to the fact that a marriage ceremony was regularly solemnized between appellee and deceased, and the question squarely presented is: Does the proof of the existence of the former marriage relation of deceased and the testimony of the former wife establish that the marriage of appellee was invalid? No man is presumed to do an unlawful act. When a marriage has been shown, the law raises a strong presumption in favor of its legality. By some of the authorities this presumption is said to be one of the strongest known to the law. Its strength increases with the lapse of time. This presumption arises because the law presumes morality, and not immorality, and that every intendment is in favor of matrimony. (Citing cases).

"This presumption applies with peculiar force in favor of one who is unable to prove affirmatively that the man with whom she entered into the marriage relation in good faith was divorced from a former wife. Appellee was not acquainted with deceased until she

met him in Colorado, and, except for the presumption
in favor of her innocence, there would be imposed upon
her an unreasonable burden if she is required to show
that, prior to her contracting marriage with the assured,
he had been divorced. It is contended on behalf of
appellant that, the marriage of deceased to his first wife
having been shown, this is sufficient to overcome the
presumption in favor of the legality of the marriage
between deceased and appellee. While it is true that
it is a presumption of law that a fact continuous in its
nature, such as marriage, continues after its existence
is once shown, yet this presumption is not sufficient in
all cases to overthrow the presumption of law in favor
of innocence. *Klein* v. *Laudman,* 29 Mo. 259. In other
words, under the facts of this case the presumption of
the continuance of the first marriage, based upon the
naked fact that it was solemnized, is not equal in pro-
bative force to the presumption in favor of legality of
appellee's marriage (*Erwin* v. *English,* 61 Conn. 502, 23
Atl. 753); so that the remaining question on this subject
is, was the evidence of the first wife, that no process in
divorce proceedings instituted by deceased had ever
been served upon her, sufficient to overthrow the pre-
sumption in favor of appellee? * * * It is not
impossible that he might have instituted proceedings for
a divorce and his first wife not have received a copy of
the summons, even though mailed to her. * * * In
this instance appellee is free from wrong. If she is
deprived of any rights, it results from no wrongful act
of hers, but from the misconduct of another. The rights
of the first wife are not involved in this proceeding.
Appellant has no claim upon the bounty of deceased, and,
in so far as her rights are dependent upon the fact that
he has been guilty of a violation of the laws of the land,
the principles of natural justice require that the evidence
to that effect should be sufficiently convincing to admit
of no other reasonable hypothesis. In such circum-
stances appellee is entitled to a broad application of
the rule that 'the law presumes morality, and not
immorality; marriage, and not concubinage'; *Teter* v.

*Teter,* 101 Ind. 129, 71 Am. Dec. 742. Considering the strong presumption which the law raises in favor of the innocence of appellee and the validity of her marriage with deceased, * * * and that legal divorce proceedings might have been instituted and terminated in his favor without process being received by her, we are of opinion that this testimony is insufficient to establish that deceased was not divorced from his first wife at the time he contracted marriage with appellee. As this conclusion is fairly deducible without considering the testimony introduced on behalf of appellee relative to what deceased told her regarding his former marriage and its dissolution, it follows that the reception of this evidence, even if error, was not prejudicial, because it could not affect the result.''

From these authorities we feel justified in again stating the law to be that, where a second marriage is established in form according to law, a presumption arises in favor of its validity as against a former marriage, even though the husband or wife of the former marriage is living at the time, and that this presumption is not overcome by the presumption of law in favor of the continuance of the first marital relation, coupled with the testimony of the former spouse that he or she has not obtained a divorce, and has no information as to whether the other spouse had obtained a divorce, and the testimony of the clerk of the divorce court where the deceased spouse had some time lived, that no divorce had been granted such spouse in such court.

We cannot say therefore that the decree of the chancery court is against the preponderance of the evidence, and the judgment is accordingly affirmed.

Hart, C. J., dissents.