SPEARS *v.* SPEARS.

Opinion delivered December 17, 1928.

Gaughan & Sifford, Marsh, McKay & Marlin and Mahony, Yocum & Saye, and I. H. Spears, for appellant.

G. E. Snuggs and Powell, Smead & Knox, for appellee.

MEHAFFY, J.   The appellee, Lesser Lee Spears, filed this suit in the Ouachita Chancery Court against Roena E. Spears, Isaiah H. Spears, D. W. Chenault, T. W. Chenault, Humble Oil & Refining Company, Standard Oil Company of Louisiana, Standard Pipe Line Company, Southern Crude Oil Purchasing Company and the Lion Oil Refining Company.   Appellee thereafter filed an amended and substituted complaint, naming other parties as defendants.   She alleges in her substituted complaint that she is a citizen and resident of Florida, and that the defendant, R. E. Spears, is a resident of Jefferson County, Arkansas; that the defendant, Isaiah H. Spears, is a resident of the State of Oklahoma; that the corporations named as defendants are nonresident corporations, authorized to do business in the State of Arkansas, and that the other defendants are nonresidents of Arkansas, except the defendants C. H. Murphy, Mrs. C. H. Murphy, Bruce Hunt, Mamie Smith McCurray, J. A. Rowland, Mrs. J. A. Rowland, C. E. Murdock and Mrs. C. E. Murdock, and alleges that they are citizens of Union County, Arkansas.

She alleges that she and A. W. Spears, now deceased, were lawfully married in January, 1898, in Jackson County, Florida; that A. W. Spears is now deceased; and that, in pursuance of said marriage, they lived and cohabited together as husband and wife, in Jackson

County, Florida, for about four years, when the said A. W. Spears deserted her, left the State of Florida, and later located in the city of Pine Bluff, Arkansas; that there were two children born to them before Spears deserted her, one of whom died, and the other now lives in Jackson County, Florida. She alleged that Spears at all times knew the whereabouts of plaintiff, or could have known by inquiry; that at the time of the desertion she was, and has been at all times since their marriage and until the death of said A. W. Spears, his lawful wife, and that she is now his widow.

She alleges that Spears, during his lifetime, owned an interest in certain property, describing it, in Ouachita County, Arkansas, and Union County, Arkansas, and that the deeds conveying to him certain property are recorded in said counties; that she is entitled to dower rights in the property described in her complaint; that the conveyances made by Spears of the property, oil, gas and mineral leases, were made without her knowledge or consent, were not executed or acknowledged by her, and that her dower right and interest in the property was never relinquished.

She then alleges the leasing and assignment of leases and transfers to other persons by said A. W. Spears, and claims that all the transfers were made without her knowledge or consent, and not executed by her, and that the parties holding the same have refused to account to her for her dower interest, and she prays for an order and decree for her interests in all of said property, as mentioned in her complaint. She also propounds certain interrogatories to certain of the defendants.

The defendants, answering, denied all the material allegations of the plaintiff's complaint with reference to her residence, her marriage with A. W. Spears, and that Spears knew of her whereabouts; alleged that she was not the lawful wife of A. W. Spears, and that she had no right, title, claim or interest in any of the property.

It is also stated in the answer of the defendants that A. W. Spears and Roena Spears were married at Pine

Bluff, Arkansas, in November, 1912, and that plaintiff knew of this marriage many years prior to the death of Spears, and knew that A. W. Spears and Roena Spears were living and cohabiting together in the State of Arkansas as man and wife from the time of their marriage in 1912; that she also knew that A. W. Spears was practicing law in Arkansas, and knew that he was transacting business in general, buying and selling real estate, and that Roena Spears was joining with him in his conveyances for many years prior to his death. It is also alleged that plaintiff knew about the execution of the mining leases.

Defendants further allege that in September, 1925, the plaintiff filed a petition in the Jefferson County Court, alleging that, at the time of the death of Spears, she was his lawful wife, and at the time of filing his petition she was his widow, and that she had a dower interest in his estate, and alleged that the marriage between A. W. Spears and Roena Spears was bigamous and void. She asked that Roena E. Spears be discharged as administratrix, and a competent person appointed.

Roena Spears filed an answer, denying the allegations of plaintiff, and the probate court made an order discharging Roena Spears as administratrix, and appointed Coy M. Nixon as administrator. Roena Spears appealed to the circuit court, and the circuit court reversed the judgment of the probate court, and removed Nixon as administrator, and reinstated Roena E. Spears. This judgment is pleaded in bar of this action.

The issue in this case is whether the plaintiff, as the widow of A. W. Spears, is entitled to dower rights in the property.

The evidence shows that the plaintiff and A. W. Spears were married on the 26th day of January, 1898, in Jackson County, Florida, near the town of Cottondale. They lived together as husband and wife in Jackson County, Florida, for about two years, when A. W. Spears left the plaintiff, and afterwards began the practice of law at Pensacola, and practiced law there until some

time in August or September, 1902, when he left there, without any intimation to his wife that he intended to leave, and without obtaining a divorce from her. He visited his wife and his people a time or two while he lived at Pensacola.

After Spears left Pensacola he settled in Pine Bluff, Arkansas, and began to practice law there. There were a few months between the time he left Pensacola and the time he located in Pine Bluff, Arkansas, that his whereabouts were not known, but he wrote a letter indicating that he had been in several States. He could not, however, have remained very long in any one of them.

After locating in Pine Bluff, in the year 1909 Spears married Minnie Temple, and they had four children, but it appears from the evidence that two of them were born before their marriage in 1909, Spears and Minnie Temple having lived together before they were married. There was never any secret about their living together, even before 1909, but he lived with her as his wife, and it is argued that it was very probable that there had been a prior marriage discovered to be illegal in some respect, and that this was the cause of the marriage in 1909. This, however, is not material, because he lived with her as his wife until she died in 1911.

About a year after Minnie Temple died, Spears married Roena Lyles, and they lived together as man and wife from 1913 until Spears died in 1925, Roena taking care of his children and living with him openly as his wife during all that time, about 12 years. The marriages, both to Minnie Temple and Roena Lyles, were at Pine Bluff, Arkansas, and were public, and they continued to reside there openly and publicly as man and wife, and Spears was engaged in the practice of law during that time.

The appellee knew of Spears' marriage for several years, but she did not notify the woman who was living with him that she was his wife, and never made any claim upon him, although she knew where he was, but claims that she burned the letters that she had received

from Spears. The appellee's contention, however, is that Spears could not have obtained a lawful divorce except in Jackson or Escambia County, Florida, and that the proof showed that he did not obtain a divorce at either of these counties, and there can be no presumption that he attempted to unlawfully obtain a divorce from her.

The first question presented and argued by counsel is whether the presumption that the marriage of A. W. Spears to Minnie Temple and his marriage to Roena Lyles were lawful, and not criminal. The appellant contends that appellee has not overcome this presumption.

Appellee testified that, after she and Spears were married in 1898, they lived together in Florida as husband and wife until the year 1900, when Spears went to Pensacola and began the practice of law there; that he practiced law there until the latter part of August or the first of September, 1902, when he left Pensacola and the State of Florida for no apparent reason, and without any notice or intimation to appellee that he intended to leave, and without obtaining a divorce. That during the time he stayed at Pensacola he visited his wife and family at intervals, and frequently contributed to their support. While in Pensacola he stayed with appellee's brother most of the time. She also testified that she had given Spears no cause for divorce or for deserting her, and had never done any of the things for which a divorce might be granted in Florida; that she had never been summoned in any divorce case brought by Spears; that she had never filed any suit for divorce herself, and that she had at all times been ready to move to the residence of Spears, but that he requested her to wait until he got his business straight and he would send for her.

The appellee has also proved that no divorce was granted in the county of Jackson or Escambia County, Florida, the only places where it is shown that Spears lived in Florida.

The proof further shows that Spears went to Memphis and stayed a while, and also to Covington, and that no divorce was granted in either of those counties. The

proof also shows that no divorce was granted in Jefferson County, Arkansas, and that no divorce was granted in St. Bernard Parish, Louisiana.

Appellee contends that this overcomes the presumption that Spears' second marriages were innocent, because he could only have been absent or away from the places mentioned for a few months, and not long enough to establish a residence in any other State. However, the proof does not show that Spears did not obtain a divorce in some county in Florida besides the one whose records were searched; it does not show that he did not get a divorce somewhere in Tennessee in some county other than Shelby or Tipton, and the proof does not show that he did not get a divorce in some county in Arkansas.

While the law requires a residence in a State for a certain length of time, it is not required that the party bringing the suit reside in the county where he brings the suit for this length of time. One might reside in Jefferson County, Arkansas, a year or more, and then establish a residence in Cleveland County, or some other county in Arkansas, where he could obtain a divorce, and then move his residence back to Pine Bluff. It is not at all impossible that he could do this without the people of Pine Bluff knowing anything about it or recalling it after so long a time. In fact, it appears very much more probable that he did something of this sort than that he would marry a woman in Pine Bluff, live with her as his wife, openly, raise children, and then, when she died, marry another woman publicly in Pine Bluff, Arkansas, and live with her many years, when, if he did not have a divorce, he would, of course, be guilty of a felony. The probability that he would not do this is strengthened by the fact that he was a lawyer, and knew that he was guilty of a felony if he did not have a divorce from his first wife. He knew that his first wife knew all about what he was doing in Pine Bluff, and knew that her people knew it. It would be entirely unreasonable to suppose that a man would incur the guilt of felony and the danger which attends the guilt of felony by marrying

another woman, living openly with her as his wife for a number of years, and then, after her death, marrying another woman and living openly with her, when he knew what the penalty of violating the law was.

We think the presumption that the marriages of Spears were innocent is also strengthened by the conduct of appellee and her people. Her brother visited at the home of Spears in Pine Bluff several years before his death. He was at that time living with a woman in the city of Pine Bluff, whom he claimed as his wife. At one of the visits of appellee's brother to the home of Spears, Spears himself was absent at El Dorado, where he was spending some portion of his time after the development of oil in Union County. The brother returned home, where the appellee lived, and she admits that she knew about the situation at Pine Bluff, and knew that A. W. Spears was living with a woman as his wife and raising a family; she knew he was dealing in Union County, and yet she never called on him for any assistance or made any claim whatever. Her conduct, as well as the conduct of her people, is a very strong circumstance tending to show that she had no claim on Spears, and it supports the presumption that Spears' conduct was not unlawful, but that he had obtained a divorce somewhere, and that his marriages in Pine Bluff were lawful.

Appellee cites and quotes from the case of *King* v. *Twyning*, 2 B. & Ald. 384. The quotation is as follows:

"The law always presumes against the commission of crime; and therefore, where a woman, twelve months after her first husband was last heard of, married a second husband, and had children by him, *held,* on appeal, that the sessions did right in presuming *prima facie* that the first husband was dead at the time of the second marriage, and that it was incumbent on the party objecting to the second marriage to give some proof that the first husband was then alive."

Appellant contends that this first announcement of the law, or the first decision to which she has referred,

was thereafter construed and modified, and quotes the following:

"There is no absolute presumption of law as to the continuance of life, nor any absolute presumption against a party doing an act because the doing of it would make him guilty of an offense against the law. In every instance the circumstances of the case must be considered." *Lapsley* v. *Grierson*, 1 H. L. C. 489.

The court also said, in the case of *King* v. *Twyning*, *supra*:

"It is not necessary for the court in this case to impugn the authority of the cases which have been cited nor to vary the ordinary presumptions which exist both in civil and criminal cases; for this is a case of conflicting presumptions, and the question is which is to prevail. The law presumes the continuation of life, but it also presumes against the commission of crime, and that even in civil cases, until the contrary be proved."

The court then, after calling attention to the cases with reference to presumption of life and presumption of innocence, continued:

"The cases cited only show when the presumption of life ceases, even where there is no conflicting presumption. The facts of this case are that there is a marriage of the pauper with Frances Burns, which is *prima facie* valid. But, the year before that took place, she was the wife of Richard Winter, and if he was alive at the time of the second marriage, it was illegal, and she was guilty of bigamy. But are we to presume that Winters was then alive? If the pauper had been indicted for bigamy, it would clearly not be sufficient. In that case Winters must have been proved to have been alive at the very time of the second marriage. It is contended that his death ought to have been proved, but the answer is that the presumption of law is that he was not alive when the consequence of his being so is that another person has committed a criminal act. I think therefore that the sessions decided right in holding the second marriage to

have been valid, unless proof had been given that the first husband was alive at the time.''

It will therefore be seen that the case to which attention is called by appellee holds that the presumption of innocence overcomes the presumption of life. In the instant case, there was a marriage between Roena Lyles and A. W. Spears. But, many years before that time, A. W. Spears had married the appellee, and, if no divorce had been granted at the time of the second marriage, it was illegal, and Spears was guilty of bigamy. The presumption is that he was not guilty of bigamy, and, as said in the case referred to, the appellee must prove that no divorce was granted, or, at any rate, make sufficient proof that there was no divorce granted at any place to overcome the presumption of innocence.

In the next case referred to by appellee, the legitimacy of the children claiming the property was an issue. It was claimed that the mother of these children was never married to John Lapsley, and the closing paragraph of that case reads as follows: ''This is a case entirely of fact, and the evidence satisfies me that in fact these parties did not live together as man and wife.''

The court in the last case also discusses the case of *King* v. *Twyning* and other cases. The court also used the language quoted by appellee, but we do not think that the decision there is in conflict with the principles herein announced, nor is it against the decision in the Lathan case. It states plainly that in every instance the circumstances of the case must be considered.

When we consider the circumstances of the instant case, we think no other conclusion can be reached than that the presumption of innocence of Spears at the time of the two marriages must prevail. And all that was held in the case of *Brokeshoulder* v. *Brokeshoulder*, Okla. 204 Pac. 284, as we understand it, was that a presumption of the legality of marriage is not a conclusive presumption. A presumption of innocence is not a conclusive presumption.

"It has been seen that, where a person has been twice married, it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved by divorce or by death of the former spouse. This presumption, however, is not conclusive; the party against whom it operates may rebut it by any competent evidence tending to show that at the time of the second marriage the first marriage was subsisting. The presumption may nevertheless be reinforced by proof of such facts as will establish a dissolution of the prior marriage; and on an issue as to the validity of a marriage, hearsay evidence that the husband had previously been married to another woman is offset by hearsay evidence that he was subsequently divorced from her." 26 Cyc. 896.

We think the presumption in this case is reinforced by all the facts and circumstances in evidence. The fact that appellee, with her two children, knew all about where Spears was and what he was doing, and for more than twelve years had no communication with him; never called on him for alimony or support of any kind; the fact that she knew that he was living with another woman and raising a family; the fact that her brother would go to see Spears and visit in the family; the fact that Spears was a lawyer and knew the penalty of marrying a second time if he had no divorce—are all facts reinforcing the presumption of the validity of the second marriage.

"It is a well established principle that the presumption is always in favor of innocence, and this presumption, although rebuttable, remains good and must be acted on until it is disproved. While this principle is most important in criminal cases, it is frequently invoked and relied on in civil cases, in which it restates the alleged presumption against illegality, etc., as a regulation of the burden of evidence, and applies whether the question of innocence or guilt is directly or only collaterally involved." 22 C. J. 144.

"Where a man and woman have openly cohabited as man and wife and had the reputation of being such, it will be presumed that they were lawfully married;

and where a marriage is proved, it will be presumed that it was regular and valid. There is also a presumption in favor of the legitimacy of a child.'' 22 C. J. 145.

Appellee has called attention to many authorities to sustain her contention, but we think it would serve no useful purpose to review all these authorities. We think, in fact, that this question is settled by this court in the case of *Latham* v. *Latham,* 175 Ark. 1037, 1 S. W. (2d) 67. The facts in that case tending to prove that no divorce had been granted, we think, are stronger than in the instant case. Among other things, the court there said, quoting from another authority: ''There was also a presumption that appellant's marriage with Jane Honeycutt was lawful, innocent, and not criminal. It is supposed that a man will not incur the guilt of felony and danger which attends it by marrying another woman during the life of one to whom he has previously been lawfully married.''

This court, in the same case, also quoted with approval the following:

''So strong is the presumption, and the law is so positive in requiring the party who asserts the illegality of a marriage to take the burden of proving it, that such requirement obtains, even though it involves the proving of a negative, and although it is shown that one of the parties had contracted a previous marriage, and the existence of the wife or husband of the former marriage at the time of the second marriage is established by proof, it is not sufficient to overcome the presumption of the validity of the second marriage, the law presuming rather that the first marriage has been dissolved by divorce, in order to sustain the second marriage.'' See *Latham* v. *Latham,* 175 Ark. 1037, 1 S. W. (2d) 67, and authorities cited there.

We think the decision in the Lathan case is conclusive here. And, since we hold that the presumption of the validity of the second marriage is not overcome by the evidence, it becomes unnecessary to discuss the other questions raised and discussed by learned counsel.

Our conclusion is that the appellee failed to overcome by proof the presumption of the validity of the subsequent marriage and the presumption of innocence of Spears, and that the case shall therefore be reversed and remanded, with directions to dismiss appellee's complaint.