GRAY *v.* GRAY.

4-5641                                      133 S. W. 2d 874

Opinion delivered November 13, 1939.

*Bernard P. Whetstone, Jr.,* for appellant.

*Ovid T. Switzer* and *Clinton J. Campbell,* for appellee.

GRIFFIN SMITH, C. J. This appeal is from a judgment, based upon a jury's verdict, that Mary Daniels Gray was the lawful wife of Cassie Gray at the time of his death in November, 1937. The parties are Negroes.

Cassie Gray and Mary Daniels were married in September, 1915. They lived together a little more than a year. Cassie became a member of the American armed forces in March, 1918, and was honorably discharged in October, 1919. In November, 1920, he married Mary Girtman, the wedding ceremony having been performed in Bastrop, Louisiana, which is in Morehouse parish.

While working for Crossett Lumber Company in 1937, Cassie was killed in circumstances which gave rise to allegations of negligence upon the part of the employer. December 7, 1937, Mary Girtman, representing herself to be the widow of Cassie Gray, applied for and was granted letters of administration in Ashley county, Arkansas.

In a petition to the Ashley probate court, sworn to December 17, Mary Daniels Gray asserted she was the widow of Cassie Gray; that although her former husband had cohabited with Mary Girtman, the latter was not his lawful wife, and that the petition of Mary Girtman for letters of administration was a fraud upon the court. The prayer was that the appointment of Mary Girtman be revoked, and that the petitioner (appellee herein) be named administratrix. Following a hearing March 19, 1939, the probate court cancelled the appointment first made and substituted appellee as administratrix by appropriate proceedings. Mary Girtman appealed to circuit court, where the contentions of Mary Daniels Gray and the order of the probate court were sustained.

Appellee testified she was almost sixteen years of age when she married; that she and her husband lived three months with John Brown, then went to her mother; that her husband was engaged in hauring logs; that he complained because she was sick; that they re-

mained with her mother until after a baby was born to witness; that the baby died in about a year; that two months after the baby's death Cassie went to Crossett Camp—"somewhere about December, 1916." Witness went to see Cassie and asked why he had deserted her. He declined to resume the marital relationship, but said: "You are sick. I'll do all I can for you until you get well." Appellee remained "there a good little while"— about three months, she being in one house and Cassie in another. Thereafter appellee returned to the town of Crossett. She remained there about three months, then returned to her mother because she (witness) was sick.

There is this testimony: "I was back and forth from my mother's and Crossett to the camp where he was. He gave me my support. The first amount was $25 in trade at the commissary at Crossett camp, and that followed with about $5 in money off and on. He continued to contribute to my support until his death. He would give me money whenever I saw him."

Amplifying her former statements, appellee testified that from March, 1917, until Cassie joined the army, she saw him almost every day. When he returned from service he went to Crossett. Appellee heard he was there and called on him. In 1920 appellee again asked Cassie to live with her, but he was then living with Mary Girtman. Appellee had been to her husband's home after he and the Girtman woman married. She insisted that Cassie never admitted to her that he had married Mary Girtman, but on the contrary denied it.

For reversal it is urged: (1) The presumption that the marriage of Cassie Gray to Mary Girtman was lawful has not been overcome. (2) Error was committed when the judge entered the jury room while the jurors were deliberating. (3) It was error to refuse to allow appellant's attorney, on cross-examination of appellee, to ask if Frances Daniels was her mother. (4) Appellant's attorney, on cross-examination of Fred Murphy, should have been permitted to ask certain questions. (5-6) It was error to refuse appellant's requested instruction No. 4 and to give appellee's instructions Nos. 1, 2, and 3.

(7) Prejudice resulted from the court's refusal to admit statements by Roy Gray and Annie Bell, witnesses by whom 'it was proposed to prove statements alleged to have been made by Cassie Gray concerning his marital status. (8) The court erred in instructing the jury to disregard the answer of Missie Gray, a witness.

*First.* The law is well settled that, where a second marriage is established in form according to law, a presumption arises in favor of its validity as against a former marriage, even though the husband or wife (as the case may be) of the former marriage is living at the time the second marriage is brought into question. It has been said by this court that the presumption of validity attending the second marriage is not overcome by the presumption of law in favor of continuance of the first marital relation, coupled with the testimony of the former spouse that he or she has not obtained a divorce. *Lathan* v. *Lathan,* 175 Ark. 1037, 1 S. W. 2d 67. Authorities relating to the subject are collected in the Lathan Case. The theory upon which the principle rests is that no man is presumed to do an unlawful act. "The law presumes morality, and not immorality, and every intendment is in favor of matrimony."

The rule, however, has its limitations, and must give way to reality when facts opposing the presumption are presented. This is true in respect of all presumptions —the term "presumption" being used to signify that which may be assumed without proof, or taken for granted. It is defined as something asserted as a self-evident result of human reason and experience.

We agree with appellant that the verdict upon which the judgment rests should not be sustained if there is a lack of substantial evidence. But, while the statements of appellee may sound improbable and doubt may arise in the minds of discriminating persons as to the truthfulness of appellee's claim that Cassie Gray contributed to her support after he married Mary Girtman, it must be conceded that the conduct asserted was not impossible, though in the circumstances it seems highly improbable. Essential testimony has been set out in the

statement of facts. It was further shown that Cassie had not obtained a divorce in either Drew or Ashley county, Arkansas, or in Morehouse parish, Louisiana. We think the evidence was sufficient to go to the jury, and its finding that there had been no divorce will not be disturbed.

*Second.* The record discloses that the trial judge left his hat in the jury room. After the jury retired to consider the issues, the judge, in circumstances free from suspicion, and in a manner not susceptible of ulterior purpose, entered the room for the sole purpose of procuring his hat. Details of extenuation are so clearly established that we deem it unnecessary to copy that part of the record.

*Third.* Appellant's attorney had asked appellee concerning policies of insurance payable to Frances Daniels. Appellee had answered (when shown the policies) that she knew nothing about them. The question was: "This policy is payable to Frances Daniels; is that your mother?" There was an objection, and the court ruled: "I can't permit you to give the effect of what is in that policy unless you prove its legality. She says it is not her policy. That is as far as you can go." There was no objection subsequent to the ruling. The witness had previously testified that her father was Oliver Daniels and that her mother's name was Frances. The question, when asked, had become immaterial. The ruling of the judge was correct.

*Fourth.* This assignment may be dismissed with the statement that appellant did not show what the answer would have been; therefore its materiality is not known. However, the court ruled that the witness had previously answered.

*Fifth.* It is objected that the court erred in refusing to give appellant's requested instruction No. 4. It is insisted: "This instruction was taken verbatim from the quotation of this court in the case of *Lathan* v. *Lathan*." In the opinion referred to the court was commenting upon presumptions, and in respect thereof there is the language: . . . "coupled with the testimony of the

former spouse that he or she has not obtained a divorce, and has no information as to whether the other spouse has obtained a divorce . . .''

No similar competent testimony appears in the instant case. Its absence was justification for the court's action in refusing the proposed instruction.

*Sixth.* This assignment goes to the court's action in giving appellee's instructions Nos. 1, 2, and 3. There has apparently been an abandonment of objections to instructions Nos. 1 and 3. Instruction No. 2 is printed in the margin.[1] It is a correct declaration of the law.

*Seventh.* Roy Gray was asked: ''When Mary Daniels Gray's name was mentioned [to Cassie] what did he say about her?'' An objection was sustained. The question was too general to be competent in the form asked. However, the record does not show what the answer, if given, would have been.

Annie Bell testified that appellee visited in her home at Crossett Camp, Louisiana; that during such visits appellee would see Cassie Gray as he passed along the highway; and on one occasion witness was asked by appellee to call Cassie. There is this testimony:

''I walked to the door and said, 'Mr. Cassie Gray?' He said, 'It is.' I said, 'There's a lady here that wants to see you.' He said, 'Who is it?' I said, 'Your wife.' ''

Appellee objected. Counsel for appellant stated that the witness, if permitted to answer, would say that Cassie Gray then said: ''That woman is no wife of mine. I have been divorced from her and don't want to have any part of her. He also said some very ugly and discourteous things about her.''

The objection was sustained and exceptions saved. Other testimony offered by the same witness, and excluded, formed the basis for an exception, but is not urged in the brief.

---

1 You are instructed that the domicil or legal residence of a person is in no way affected by his enlistment in the military or naval services of his country and he does not thereby abandon or lose the legal residence which he had when he entered the service or acquire one at the place where he serves.

Appellant quotes from 26 Cyc. 896: ". . . on an issue as to the validity of a marriage, hearsay evidence that the husband had previously been married to another woman is offset by hearsay evidence that he was subsequently divorced." It is also insisted that certain language in *Estes* v. *Merrill,* 121 Ark. 361, p. 370, 181 S. W. 136, is authority for the proposition that the *ex parte* statement of a spouse, since dead, that he was divorced from a former wife, is competent. It must be conceded that the quoted portion of the opinion seems to support appellant's position. However, the decision does not show that the testimony was objected to.

We think *Brotherhood of Railroad Trainmen* v. *Fountaine,* 155 Ark. 578, 245 S. W. 17, more comprehensively declares the law. There it was said: "Appellee was permitted to prove by the testimony of witness Lindsey, introduced over appellant's objection, that Meredith had stated to him, subsequent to his intermarriage to appellee, that he had been divorced from his former wife, Nora. Other similar declarations made by Meredith were admitted in evidence, over appellant's objections. We are of the opinion that this testimony was incompetent and should not have been admitted. We decided on the former appeal that declarations and admissions of Meredith to the effect that he had not been divorced from his former wife, Nora, were not admissible against appellee as the beneficiary under the certificate. We are unable to conceive any rule upon which the declarations of Meredith would be competent evidence against appellant. The statements of Meredith were merely self-serving, and it necessarily follows that they were not admissible against the appellant as tending to show that there had been a divorce."

Statements of Cassie Gray were self-serving. If Annie Bell told him that his wife (appellee) wanted to see him, and he promptly denied that she was his wife, the statements were intended to sustain his own purposes—that is, to persuade Annie Bell he was telling the truth when he said, "that woman is no wife of mine," and that he had been divorced from her. Having married

Mary Girtman, self-protection would suggest that 'he declare against a situation constituting bigamy, and in favor of the legal and social regularity of his status.

*Eighth.* The court ruled that the question (see assignment No. 8) as asked was leading. We agree. But, irrespective of this construction, the record does not show what the answer would have been.

There were no prejudicial errors. The judgment is affirmed.