MILLER *v.* MILLER.

5-3036                                                371 S. W. 2d 511

Opinion delivered October 21, 1963.

*Spitzberg, Bonner, Mitchell & Hays,* by *Steel Hays* and *Allan W. Horne,* for appellant.

*Lookadoo, Gooch & Lookadoo,* by *J. Hugh Lookadoo* and *Agnes F. Ashby,* for appellee.

ED. F. McFADDIN, Associate Justice. This litigation involves (a) the will of Sam Miller; and (b) his marital status. Sam Miller departed this life, a citizen and resident of Clark County, Arkansas, in 1958, at the age of 78 years. In due time his will was admitted to probate by the Clark Probate Court, and his son, Marvin Miller, named as executor, proceeded to act under the will. Within the period permitted by law (Ark. Stat. Ann. § 62-2114 [1947]) the appellants objected to the will and questioned the marital status of the deceased, Sam Miller. The probate court ruled against the appellants on all points; and this appeal ensued.

Until 1919 or 1920, Sam Miller lived in Kentucky, and was married to the appellant, Dinah Miller in 1901. Three children are the issue of that marriage, being the appellants herein, Casper Miller, Frances Miller Speak,

and Mary Miller Barraco.[1] In 1919 or 1920 Sam Miller left his wife and three children in Kentucky and moved to Arkansas; and on July 11, 1920, he married Ethel Dodd in Garland County, Arkansas; and four children are the issue of that marriage, one of whom is the appellee, Marvin Miller, executor of the will of the deceased, Sam Miller. Mrs. Ethel Dodd Miller departed this life a few years ago; and Mr. Miller did not thereafter remarry. From 1922 until his death in 1958 Sam Miller lived in Gurdon, Clark County, Arkansas. His will was executed October 23, 1958; and he died on November 28, 1958. We proceed to consider the two issues on this appeal.

I. *The Validity of the Will of Sam Miller.* In the will Mr. Miller left his entire estate to his four children who were the issue of his second marriage. He named his Kentucky children in the will by using this language:

"I am not unmindful of the fact that I have three children by a previous marriage, namely Casper Miller, Frances Miller, who is now married to someone I do not know, and Mary Miller, who is also married to someone I do not know. I direct that they shall have nothing from my estate."

The Kentucky children do not claim as pretermitted heirs: rather, their claim is based on the assertion that Mr. Miller was under the complete influence and domination of his son, Marvin Miller, and that the will was the result of duress exercised by Marvin Miller on his father. The evidence entirely fails to substantiate such attack on the validity of the will. It was shown that Mr. Miller had executed a will in 1957 in which he did not name the Kentucky children; that when he showed this will to his son, Marvin Miller, to discuss with him the duties of an executor, Marvin Miller pointed out that the Kentucky children, not being named in the 1957 will, would take as pretermitted heirs. Mr. Miller thereupon contacted his attorney and the 1958 will was prepared. Mr. Miller took the 1958 will from his attorney and went,

---

[1] We will sometimes hereinafter refer to the appellants, who are children of Mrs. Dinah Miller, as "the Kentucky children."

alone and unassisted, to the First National Bank in Gurdon; and there, in the Bank, called on Mr. Willard Tarpley and Mrs. Joe Davis to attest his will. These parties called as witnesses testified that Mr. Miller signed the will in their presence, and asked them to be attesting witnesses, and they signed the will as such witnesses in his presence and in the presence of each other. Each witness testified that Mr. Miller knew what he was doing and that he was not accompanied by any person. There is no evidence of any duress exerted by Marvin Miller on Mr. Sam Miller: the positive evidence is entirely to the contrary. The Probate Court was correct in sustaining the validity of the will of Mr. Miller.

II. *The Dower Claim of Mrs. Dinah Miller.* Mrs. Dinah Miller claimed that she and Sam Miller were lawfully married in Kentucky in 1901; that they were never legally divorced; and that she was entitled to dower. It was stipulated that Sam Miller and Dinah Miller were married in Rockcastle County, Kentucky, on April 26, 1901; that there was no record of any divorce proceedings between Sam Miller and Dinah Miller in the court records of Rockcastle, Harlan, or Bell County, Kentucky, or in the court records of Garland or Clark County, Arkansas, or in Windsor, Ontario, Canada. Mrs. Dinah Miller testified that she and Sam Miller were lawfully married in Kentucky; that they lived together as husband and wife for nineteen years and had three children (being the Kentucky children previously named); that they all the time lived in the State of Kentucky; that in 1920 Sam Miller went to Hot Springs, Arkansas, for treatment of an illness and remained there about a month; that when he returned to Kentucky the marital relationship was resumed; that he stayed at home about a month; that they had a general store and a farm of about 112 acres; that she joined with Sam Miller in a deed and other instrument in disposing of these properties; that he left and deserted her in 1920 and never came back; that she remained in Kentucky until 1923; that he never contributed anything to her support after 1920; and that she never received any notice of any kind that Sam Miller had instituted any divorce proceedings

against her in any place. Mrs. Dinah Miller was corroborated by some of the other parties as to the fact that Sam Miller left in 1920, and was also corroborated on some other points.

The big question in this case is whether the appellant, Mrs. Dinah Miller, has offered sufficient proof to overcome the presumption of the validity of Sam Miller's marriage to Ethel Dodd in Garland County, Arkansas, on July 11, 1920. The marriage certificate, with the return of the officiating minister thereon, and the recording by the County Clerk, was duly introduced in evidence. With the marriage to Ethel Dodd in 1920 being established, there is a presumption that it was a valid marriage, and the burden was and is on Mrs. Dinah Miller to prove that marriage to be void if Mrs. Dinah Miller is to receive any dower interest in the estate of Sam Miller. She attempted to prove the invalidity of the 1920 marriage to Ethel Dodd by proving (a) her own valid marriage to Sam Miller in Kentucky in 1901; and (b) the complete negation of any divorce granted Sam Miller from her or to her from him. The Trial Court held that Mrs. Dinah Miller had failed to offer sufficient proof to overcome the presumption of the validity of the second marriage; and the correctness of that holding is the issue on this appeal.

We have several cases bearing on the question presented, some of which are: *Estes* v. *Merrill,* 121 Ark. 361, 181 S. W. 136; *Lathan* v. *Lathan,* 175 Ark. 1037, 1 S. W. 2d 67; *Spears* v. *Spears,* 178 Ark. 720, 12 S. W. 2d 875; *Gray* v. *Gray,* 199 Ark. 152, 133 S. W. 2d 874; and *Shaw* v. *Brewer,* 234 Ark. 898, 356 S. W. 2d 17. Throughout all of our cases the rule is reiterated (as stated in *Gray* v. *Gray, supra*):

"The law is well settled that, where a second marriage is established in form according to law, a presumption arises in favor of its validity as against a former marriage, even though the husband or wife (as the case may be) of the former marriage is living at the time the second marriage is brought into question. It has been said by this court that the presumption of validity at-

tending the second marriage is not overcome by the presumption of law in favor of the continuance of the first marital relation, coupled with the testimony of the former spouse that he or she has not obtained a divorce.''

In *Lathan* v. *Lathan, supra,* Justice McHaney reviewed our earlier cases and showed the strength of the rule by this quotation from *Estes* v. *Merrill, supra:*

'' 'So strong is the presumption and the law is so positive in requiring the party who asserts the illegality of a marriage to take the burden of proving it, that such requirement obtains, even though it involves the proving of a negative, and although it is shown that one of the parties had contracted a previous marriage, and the existence of the wife or husband of the former marriage at the time of the second marriage is established by proof, it is not sufficient to overcome the presumption of the validity of the second marriage, the law presuming rather that the first marriage has been dissolved by divorce, in order to sustain the second marriage.' ''

In *Spears* v. *Spears, supra,* Justice Mehaffy indicated how great a burden was placed on the party attacking the second marriage. There, as here, the first wife claimed the subsequent marriages were invalid and that she had introduced sufficient proof to overcome the presumption of the validity of the subsequent marriages; and Justice Mehaffy said:

''However, the proof does not show that Spears did not obtain a divorce in some county in Florida besides the one whose records were searched; it does not show that he did not get a divorce somewhere in Tennessee in some county other than Shelby or Tipton, and the proof does not show that he did not get a divorce in some county in Arkansas. While the law requires a residence in a State for a certain length of time, it is not required that the party bringing the suit reside in the county where he brings the suit for this length of time. One might reside in Jefferson County, Arkansas, a year or more, and then establish a residence in Cleveland County, or some other county in Arkansas, where he

could obtain a divorce, and then move his residence back to Pine Bluff. . . .

"We think the presumption that the marriages of Spears were innocent is also strengthened by the conduct of appellee and her people. . . . Her conduct, as well as the conduct of her people, is a very strong circumstance tending to show that she had no claim on Spears, and it supports the presumption that Spears' conduct was not unlawful, but that he had obtained a divorce somewhere, and that his marriages in Pine Bluff were lawful."

Applying the rule of the foregoing cases[2] to the case at bar leads us to the conclusion that the Chancery decree was correct. Sam Miller left Kentucky in 1919 or 1920. His mother continued to live with Mrs. Dinah Miller for a short time. Later, in about 1922 or 1923, Sam Miller's mother moved from Kentucky to Gurdon, Arkansas, and lived there with Sam Miller until her death several years later; and her body was returned to Kentucky for burial. It was stipulated that Mrs. Dinah Miller knew of the whereabouts of Sam Miller and his family since 1922; and it was further stipulated that the character, veracity, and integrity of Sam Miller was good. In 1944 some of his Kentucky children came to Gurdon, Arkansas, to visit him, and he subsequently corresponded with them. They knew of his marriage to Ethel Dodd Miller, and met and knew some of the children of that marriage. Yet the record fails to show that Mrs. Dinah Miller ever made any claim on Sam Miller in any way from the so-called desertion in 1920 until after his death. From 1920 to 1958—for 38 years—Sam Miller claimed he was legally married to Ethel Dodd Miller, and during all those 38 years neither Mrs. Dinah Miller, nor anyone for her, saw fit to question such marriage. Mrs. Dinah Miller had signed a deed or other instrument with Sam Miller in 1920 disposing of the lands in Kentucky; but no copy of that instrument was

---

[2] Our cases are in accordance with the holdings generally. See 35 Am. Jur. p. 322, "Marriage" § 216; and see annotation, "Presumption as to validity of second marriage," in 14 A.L.R. 2d p. 7.

introduced by her to show the capacity in which she signed; that is, as wife or divorced wife.

It was stipulated that the court records in certain of the counties in Kentucky, as previously named, showed no divorce proceedings between Sam Miller and Dinah Miller; but that stipulation did not negative the possibility of divorce in any of the other counties in Kentucky. In *Johnson* v. *Johnson,* 12 Bush 485 (1877), and in *Tudor* v. *Tudor,* 101 Ky. 530 (1897), the Supreme Court of Kentucky held that the defendant in an action for divorce, by failing to plead or object to the jurisdiction on account of the suit not being in the county of the residence of the female defendant, waives the jurisdiction of venue, and the court will have complete jurisdiction to hear and determine the case on its merits. One or the other of these early Kentucky cases has been cited with approval in many subsequent Kentucky cases, some of which are: *Gorin* v. *Gorin* (1942), 292 Ky. 562, 167 S. W. 2d 52; *Smith* v. *Smith* (Ky. 1951), 242 S. W. 2d 860; and *Jones* v. *Jones* (Ky. 1959), 320 S. W. 2d 124. We mention this to show that the mere fact that no divorce proceedings were in three of the counties in Kentucky did not negative in any way the possibility of divorce proceedings in other counties in Kentucky. Of course, any divorce granted would have to be a valid divorce *Orsburn* v. *Graves,* 213 Ark. 727, 210 S. W. 2d 496; but if Sam Miller and Mrs. Dinah Miller had a divorce proceeding in any county in Kentucky and she did not raise any question of jurisdiction or venue, then the divorce would be valid. The burden resting on Mrs. Dinah Miller to show the entire absence of any legal divorce was not discharged by the stipulations and proof in this case.

It would unduly prolong this opinion to further detail the evidence. We conclude that the Chancery decree was correct and it is in all things affirmed.