Janet L. BOWERS, Petitioner,

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

No. 91–1377.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 11, 1992.

Decided Nov. 3, 1992.

As Amended Nov. 5, 1992.

David E. Kindermann, Rockville, Md., for petitioner.

Thomas W. Sadler, Asst. General Counsel, Railroad Retirement Board ("RRB"), Chicago, Ill., with whom Catherine C. Cook, General Counsel, Washington, D.C., Steven A. Bartholow, Deputy General Counsel, and Edward S. Hintzke, Asst. General Counsel, RRB, Chicago, Ill., were on the brief, for respondent.

Before BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

BUCKLEY, Circuit Judge:

Janet Bowers petitions for review of a decision of the Railroad Retirement Board denying her application for a disability annuity under section 2(a)(1)(v) of the Railroad Retirement Act of 1974. The Board found that Mrs. Bowers had not met her burden of showing that she was unable to perform her "past relevant work," as is required by section 404.1520(e) of the Social Security regulations governing disability determinations. Because the Board's decision is supported by substantial evidence and not premised on an error of law, we affirm.

I. BACKGROUND

Petitioner Janet Bowers is fifty-six years old and resides in Hagerstown, Maryland. She has completed high school, but she has no specialized vocational training. From 1967 through 1974, Mrs. Bowers worked for the Chessie System Railroads ("Railroad"), first as a keypunch operator and then as a member of the Railroad's purchasing department. In 1977, Mrs. Bowers returned to the Railroad as a clerk on the

"extra board." This position involved a variety of semi-skilled assignments, such as checking on the trains in the yard, typing, and keypunch operation. It also required that Mrs. Bowers work on various shifts, depending on the Railroad's needs. Except for a brief period in which she was assigned to "the eastbound desk job," Mrs. Bowers continued to work as an extra board clerk during the remainder of her employment with the Railroad.

In 1962, Mrs. Bowers was diagnosed as having a form of diabetes known as "brittle diabetes." Despite daily insulin injections, her condition gradually deteriorated. In late 1984, Mrs. Bowers began to experience significant problems with her hands. When she clenched her fingers to hold an item, her fingers would lock. She would then have to pry the fingers open with her other hand, causing great pain. This condition, known as "trigger finger," steadily worsened until May 29, 1985, when Mrs. Bowers had surgery on two of her fingers. After the surgery, Mrs. Bowers' hands demonstrated some improvement, but the locking of her fingers continues. Mrs. Bowers also suffers periodically from blurred vision due to fluctuations in her blood sugar level.

On July 7, 1985, approximately a month after her finger surgery, Mrs. Bowers was examined by her personal physician, Dr. Harold P. Tritch. Dr. Tritch forwarded the results of his examination to the Railroad's Chief Medical Officer, Dr. Joseph A. Thomasino. Shortly thereafter, in a letter dated July 19, 1985, Dr. Thomasino informed Mrs. Bowers that he found her medically unqualified for service in her existing position because her diabetes did not appear to be under sufficient control. Dr. Thomasino also stated that he would request further information from Dr. Tritch and would then decide whether she could return to work.

On August 30, 1985, Dr. Tritch sent Dr. Thomasino a letter reviewing Mrs. Bowers' diabetic condition and enclosing the results of her most recent blood tests. Dr. Tritch concluded that

[s]ince we cannot improve her diabetic therapy and she apparently does not meet the job health requirements you have described to me, I feel she should be on disability.

Appendix ("App.") at 24. On September 24, 1985, Mrs. Bowers' ophthalmologist, Dr. Walter T. Spelsberg, wrote Dr. Thomasino to report on the condition of her eyes. He informed the doctor that Mrs. Bowers' visual acuity varied with the amount of sugar in her blood, *id.* at 27, and advised that

[t]he patient ... should only work one particular shift.... In addition, the patient should ... not be sent on road trips as this is against the good control of her diabetes. The patient's vision is good enough for her to work if she is kept in the above conditions, but if she is not, the vision will tend to vary and her diabetes will tend to become worse.

*Id.* After reviewing this information, Dr. Thomasino wrote to Mrs. Bowers on October 23, 1985, stating that he had received Dr. Spelsberg's letter and that

[i]n view of the fact that you are employed as an extra board clerk and therefore called upon to do a variety of tasks during a variety of shifts ... I am unable to find you medically qualified given these restrictions.

*Id.* at 29.

On September 12, 1986, Mrs. Bowers filed an application with the Board for a total and permanent disability annuity under section 2(a)(1)(v) of the Railroad Retirement Act of 1974 ("RRA"). 45 U.S.C. § 231a(a)(1)(v) (1988). On June 11, 1987, the Board's Bureau of Retirement Claims denied Mrs. Bowers' application. She subsequently sought and received a *de novo* review of her claim before an appeals referee. After a hearing at which both she and a vocational expert testified, the referee rejected Mrs. Bowers' claim because she had failed to demonstrate her inability to perform her "past relevant work" within the meaning of section 404.1520(e) of the Social Security Administration's disability regulations. 20 C.F.R. § 404.1520(e) (1992). The referee's decision was later

affirmed and adopted by a majority of the Board.

Mrs. Bowers now petitions for review of this decision pursuant to section 8 of the RRA, 45 U.S.C. § 231g, which incorporates by reference the judicial review provisions of the Railroad Unemployment Insurance Act. *Id.* §§ 351–68. Mrs. Bowers argues both that she is unable to perform her past relevant work and that she is incapable of performing other jobs in the national economy. Because we hold that there is substantial evidence to support the Board's conclusion concerning Bowers' ability to perform her past relevant work, we do not address her second argument.

## II. DISCUSSION

### A. Standard of Review

■ The Railroad Unemployment Insurance Act provides that "findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." 45 U.S.C. § 355(f). This provision "has been interpreted uniformly as meaning simply that ... the Board's decision should not be disturbed if supported by substantial evidence in the record and if not based on an error of law." *Andrews v. Railroad Retirement Bd.*, 595 F.2d 676, 681 n. 59 (D.C.Cir.1978) (citations and internal quotations omitted).

### B. Legal Framework

■ Under section 2(a)(1)(v) of the RRA, annuities are available to railroad employees with at least ten years of service "whose permanent physical or mental condition is such that they are unable to engage in any regular employment." 45 U.S.C. § 231a(a)(1)(v). The standard for granting annuities under this section closely resembles that for making disability determinations under the Social Security Act. *See* 42 U.S.C. § 416(i)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity"). Because these standards are virtually identical, "it is the accepted practice to use social security cases as precedent for railroad retirement cases." *Burleson v. Railroad Retirement Bd.*, 711 F.2d 861, 862 (8th Cir.

1983); *see also Goodson v. Railroad Retirement Bd.*, 595 F.2d 881, 882 n. 2 (D.C.Cir.1979). Where appropriate, the Board will apply the regulations of the Social Security Administration in determining eligibility for disability benefits under the Railroad Retirement Act. *See, e.g., Aspros v. Railroad Retirement Bd.*, 904 F.2d 384, 386 (7th Cir.1990) (upholding use of section 404.1520 of the Social Security regulations, 20 C.F.R. § 404.1520, in adjudicating claim under Railroad Retirement Act); *Burleson*, 711 F.2d at 862–63 (applying section 404.1567(a) of the regulations to railroad disability case).

■ Section 404.1505(a) of the Social Security regulations conditions a finding of disability on proof that the claimant suffers from a "severe impairment, which makes [the claimant] unable to do [his] previous work or any other substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505(a). Section 404.1520 establishes a five-step procedure for evaluating disability claims, *see id.* § 404.1520; subsection (e) provides, in relevant part:

*Your impairments(s) must prevent you from doing past relevant work.* ... [W]e ... review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

*Id.* § 404.1520(e) (emphasis in original). If the claimant successfully demonstrates an inability to perform his past relevant work, the burden shifts to the Board to show "the existence of work in the national economy for a person of [the claimant]'s age, education, work experience and physical disabilities." *Goodson*, 595 F.2d at 883.

### C. Bowers' Ability to Perform Her Past Relevant Work

■ The appeals referee found that Mrs. Bowers had

not demonstrated the existence of an impairment or combination of impairments which are of a level of severity as to significantly affect her ability to engage in her usual occupation.

Decision of the Appeals Referee, Appeal No. 88–407, R.R.B. No. A–217–32–7433, at 6 (Dec. 27, 1988) ("Appeals Referee Decision"), *reprinted in* App. at 3, 8. Because she had failed to meet this initial burden, the referee concluded that it was not necessary to determine whether she was otherwise employable. Appeals Referee Decision at 6.

The referee emphasized that the Chief Medical Officer's disqualification of Mrs. Bowers for continued service as an extra board clerk was premised not on an inability to perform the work, but on the fact that the Railroad could not accommodate Dr. Spelsberg's requirement that she be restricted to one work shift. In the referee's words, Mrs. Bowers' disqualification "was based on a concern over disrupting her regular sleeping and dietary routine and, thus, causing an exacerbation of her diabetic condition." *Id.* at 5.

Mrs. Bowers challenges these findings. She contends that the Board's conclusion that she had failed to establish her inability to continue performing her past relevant work is not supported by substantial evidence. She also asserts that the mere fact that she was discharged from her prior job for medical reasons is sufficient as a matter of law to shift to the Board the burden of demonstrating that she was otherwise employable.

Mrs. Bowers' first argument is premised on her belief that as used in section 404.-1520(e) of the Social Security regulations, the term "past relevant work" refers to the specific job a claimant had previously held rather than to the nature of the work that was required by that position. The Social Security Administration, however, has provided the following guidance for "determining whether a claimant can perform his or her past relevant work":

> Under section[ ] 404.1520(e) ... a claimant will be found to be "not disabled" when it is determined that he or she retains the [residual functional capacity] to perform:
>
> 1. The actual functional demands and job duties of a particular past relevant job; *or*

> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

Social Security Administration Ruling 82–61 (emphasis added).

On the basis of this ruling, the Seventh Circuit, in *Steward v. Bowen*, 858 F.2d 1295, 1299–1302 (7th Cir.1988), upheld the denial of an annuity even though the claimant was unable to perform that portion of her former responsibilities as a receptionist that required her on occasion to climb stairs to check on patients. The court found that the claimant had not met her burden because she retained "the residual functional capacity to perform the job of receptionist as that occupation is generally performed in the national economy." *Id.* at 1302. *See also Orlando v. Heckler*, 776 F.2d 209, 215–16 (7th Cir.1985) (holding that claimant's contention "that the administrative law judge was required to compare his residual functional capacity to the actual functional demands and job duties of his particular past relevant job is without merit"). We conclude that in determining whether an annuity claimant is unable to perform his past relevant work, it is necessary to separate the content of the claimant's past work from the context in which it was performed, and then to assess whether he retains the ability to perform the work-related tasks under what would be considered "ordinary" conditions.

In the present case, the referee found that Mrs. Bowers had not "demonstrated the existence of an impairment or combination of impairments which ... significantly affect her ability to engage in her usual occupation." Appeals Referee Decision at 6. There is substantial evidence in the record to support this finding. Dr. Spelsberg's opinion established that Mrs. Bowers' vision was "good enough for her to work" and that her diabetes could be adequately controlled if her working hours were confined to one particular shift. App. at 27. Moreover, as the referee pointed out, when Mrs. Bowers filed her application for an annuity, she "contended that she had been able to work despite her diabetes

and that she would still be working had she not been disqualified." Appeals Referee Decision at 5. He also noted that

> [b]y her own admission the appellant had left her job reluctantly and had felt that she could continue working. The problems of aching and contracture of her fingers [were] not mentioned in her application as having had an effect on her ability to work.

*Id.*

Mrs. Bowers nevertheless contends that her medical disqualification by the Railroad sufficed as a matter of law to shift to the Board the burden of showing that she can perform other work in the national economy. This argument is also flawed. Mrs. Bowers relies specifically on section 2(a)(2) of the RRA, which provides that "[a]n individual's condition shall be deemed to be disabling for work in his regular occupation if he will have been disqualified by his employer for service...." 45 U.S.C. § 231a(a)(2). This provision, however, applies only to individuals qualifying for a disability annuity under section 2(a)(1)(iv), namely, those "who (A) have completed twenty years of service or (B) have attained the age of sixty." *Id.* § 231a(a)(1)(iv). Mrs. Bowers meets neither requirement.

Mrs. Bowers also relies on the Eighth Circuit's decision in *Pandil v. Railroad Retirement Bd.*, 724 F.2d 705 (8th Cir. 1984). In *Pandil*, the court remanded the Board's denial of an annuity on the ground that "undisputed" testimony that an employer had medically disqualified an employee "from returning to his former jobs ... should have shifted to the Board the burden of proving [the employee] could do other regular work." *Id.* at 707. As an initial matter, there is some question whether the *Pandil* court's focus on the employee's "former jobs" is consistent with the proper interpretation of the term "past relevant work." In addition, the railroad employee in *Pandil* had a physical condition—a cervical fusion—that would likely have affected his ability to perform the job-related functions of his previous work regardless of the conditions under which that

work was performed. Accordingly, *Pandil* does not clearly establish that the burden should shift where, as here, the medical disqualification was premised on an inability to accommodate the claimant's particular scheduling needs.

### III. CONCLUSION

For the foregoing reasons, Mrs. Bowers' petition for review is

*Denied.*