43 F.3d 1467
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.Gerald Lee LONG, Petitioner,v.U.S. RAILROAD RETIREMENT BOARD, Respondent.
 No. 94-1509.
 United States Court of Appeals, Fourth Circuit.
 Dec. 8, 1994.Argued: November 1, 1994.Decided: December 8, 1994.
 
 On Petition for Review of an Order of the Railroad Retirement Board. (A-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)
 Charles D. Bennett, Jr., Roanoke, Virginia, for Petitioner.
 Marguerite P. Dadabo, General Attorney, Railroad Retirement Board, Chicago, Illinois, for Respondent.
 Catherine C. Cook, General Counsel, Stephen A. Bartholow, Deputy General Counsel, Thomas W. Sadler, Assistant General Counsel, Railroad Retirement Board, Chicago, Illinois, for Respondent.
 R.R. Retirement Bd.
 AFFIRMED.
 Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Gerald Lee Long petitions for review of a decision of the United States Railroad Retirement Board denying his application for a disability annuity under 45 U.S.C. Sec. 231a(a)(1)(v) (1986). That provision states, "The following described individuals ... [are] entitled to annuities ... (v) individuals whose permanent physical or mental condition is such that they are unable to engage in any regular employment." We affirm.
 
 I.
 
 2
 The hearing officer diligently examined Long's work and medical history. We state the facts relevant to his appeal briefly below.
 
 
 3
 Long was 48 years old on April 19, 1993, the date of the final Board decision denying his application for a disability annuity. From 1966 to 1979, and from 1987 to 1989, Long worked for the railroad as a fireman, engineer, brakeman, and conductor. Prior to his railroad employment, Long graduated from high school, attended railroad engineer training school, and took college courses but never received a degree. From 1979 to 1987, Long repaired motor homes, "worked as a service advisor/service manager and director at some automotive shops," and "did some maintenance work in a meat packing outfit."
 
 
 4
 Long stated that he stopped working altogether on July 9, 1989, "[b]ecause I got down to where I couldn't even walk. I had a bunch of charley horses or whatever in my thigh and hips and back." Long's physical problems apparently began on November 19, 1988, when he fractured his left ankle. On or about January 30, 1989, he returned to work. His physical condition deteriorated, however. He sought medical treatment and was diagnosed as having back problems. Long saw a series of doctors, none of whom was able to improve his physical condition. As a result of his physical ailments, Long's mental health also suffered.
 
 
 5
 On May, 18, 1990, Long applied for a disability annuity. His application was denied. He requested reconsideration of the decision denying his application. Upon reconsideration, his request for a disability annuity was again denied. He appealed from the reconsideration decision. A hearing officer conducted a de novo review of Long's case. At that hearing, both Long and a vocational expert testified. Long was advised of his right to be represented by an attorney, but chose to represent himself. After the hearing, the hearing officer issued a sixteen page written opinion, replete with findings of fact. The officer concluded by denying Long's appeal because Long retained "the residual functional capacity to perform the duties of his past relevant work of automobile service advisor and automobile service manager," and therefore was not eligible for a disability annuity under 45 U.S.C. Sec. 231a(a)(1)(v). Long appealed the hearing officer's decision to the three member Railroad Retirement Board. A majority of the Board denied Long's appeal, adopting and affirming the decision of the hearing officer; one member dissented without opinion. Long then appealed to this court.
 
 
 6
 The Railroad Unemployment Insurance Act provides that, "[t]he findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." 45 U.S.C. Sec. 355(f). "This provision 'has been interpreted uniformly as meaning simply that ... the Board's decision should not be disturbed if supported by substantial evidence in the record and if not based on an error of law.' " Bowers v. Railroad Retirement Bd., 977 F.2d 1485, 1488 (D.C.Cir.1992) (quoting Andrews v. Railroad Retirement Board, 595 F.2d 676, 681 n. 59 (D.C.Cir.1978)).
 
 II.
 
 7
 Because we agree with Long that the hearing officer's "credibility finding is the linchpin finding," we first address Long's complaints about that finding. Long raises two distinct, but related "credibility" claims.
 
 
 8
 First, Long claims that the hearing officer erred in failing to assist him, a pro se litigant, by not asking him for his explanation of "bizarre" written statements Long had made, but nevertheless finding him not credible only because of these statements. Central to Long's argument is his contention that his testimony was consistent with his medical records and in stark contrast to his "bizarre" prior written statements. This purported distinction between the unbelievable written statements and believable oral testimony simply does not exist.
 
 
 9
 A hearing officer has a duty to assist a pro se claimant by fully developing the record. See Crider v. Harris, 624 F.2d 15 (4th Cir.1980). The hearing officer in the present case fully developed the record, and the fully developed record established that Long did not present credible evidence, either at the hearing or in his letters. Moreover, the hearing officer did ask Long about statements he made in prior letters to the hearing officer. Long's oral responses affirmed several of his written statements. In response to the hearing officer's questions, Long restated the baseless claim he made in a letter that doctors informed him that he would need several operations to correct his problems. At the hearing, Long also reasserted his "bizarre" statements as to muscle atrophy, explaining that the atrophy in his left leg, to which he had earlier attributed 14-17 pounds of muscle loss, was not as noticeable because his right leg had atrophied enough so that the two looked proportionate. Neither of these statements is consistent with the medical evidence and both support the hearing officer's credibility finding. For these reasons we reject Long's assertion that the hearing officer failed to develop the record fully.
 
 
 10
 We next consider Long's related claim that his "credibility is not reduced by the bizarre statements he made." The hearing officer weighed the evidence in this case and determined that Long's claims of physical and mental disability were exaggerated. In addition to Long's own written and oral statements, other evidence supports this finding. Long's first psychological evaluation noted that he attempted to present himself in "an improbably favorable light," yet when Dr. Parisi later examined him, Long sought to "exaggerate his difficulties." This evidence of past attempts to deceive obviously supported the hearing officer's finding that Long was not credible.
 
 
 11
 Finally, even if the hearing officer had failed to develop the record, and there is no evidence that he did, a pro se claimant must show that he was prejudiced by this failure. See Sims v. Harris, 631 F.2d 26, 28 (4th Cir.1980). Long did not demonstrate prejudice, either in his brief or at oral argument. His counsel's speculation as to possible rational explanations for Long's statements do not constitute a showing of prejudice.
 
 III.
 
 12
 Long further asserts that substantial evidence does not support the hearing officer's finding that Long "retains the residual functional capacity to perform the duties of his past relevant work of automobile service advisor and automobile service manager." He is wrong. Long bore the burden of establishing that he was so severely disabled as to preclude him from performing the work he had performed in the past. The hearing officer found he did not meet this burden and that Long could perform the duties of automobile service advisor and automobile service manager.
 
 
 13
 Substantial evidence supports this finding. Dr. Lauro opined:
 
 
 14
 I suspect that he does have some element of chronic back pain which would be aggravated by walking long distances, lifting heavy objects on a recurrent or repetitive basis. These symptoms may also be aggravated by bending or stooping. However, this patient could possibly be employed as a supervisor or clerical type worker where he would avoid any activity that required lifting 50 lb. or greater on a repetitive basis or bending, or stooping, or climbing any significant height.
 
 
 15
 Similarly, although Dr. Coffee stated that Long was "disabled at this time," he also concluded that Long could both sit and stand/walk for 8 hours in an 8 hour work day. The only restriction that Dr. Milton noted was that Long would "not be able to return to any occupation that requires heavy lifting or bending." We are aware that the opinions rendered by Drs. Brown and Zetner were more equivocal, but the hearing officer noted both Dr. Brown's letter and Dr. Zetner's report and pointed out legitimate reasons for not giving those opinions significant weight. Moreover, as the hearing officer observed, neither opinion states a conclusion contrary to the hearing officer's finding that Long could return to his prior work as an automobile service advisor or automobile service manager.
 
 
 16
 Long also contends that his "stress intolerance" disables him from performing either of these jobs, even if the hearing officer was correct that he could physically perform them. The problem with Long's argument is that the hearing officer did not find that Long was completely unable to deal with work stress, and the hearing officer's position is justified by substantial evidence in the record. It was within the hearing officer's discretion, having considered the opinions of Drs. Branyon and Parisi, to find that Long retained sufficient ability to deal with stress to perform the automobile service advisor and automobile service manager jobs.
 
 
 17
 Dr. Branyon concluded his analysis by saying, "At present I do not find a psychiatric disorder in this individual. There was not a psychiatric diagnosis appropriate.... Disability is thought to relate to his physical problem without concomitant mental disorder." Because of Long's attempt to "exaggerate his difficulties," Dr. Parisi noted that "[h]is clinical profile is therefore extremely elevated, but still valid." Without discounting for this elevation, Parisi rated Long as "Poor [or] None" with regard to his ability to "Deal with work stress." Notwithstanding this assessment, Parisi stated that Long's "Mental impairment is due to physical disability, especially chronic pain. [Patient] is not psychologically disabled." (emphasis in original).
 
 
 18
 For all of these reasons, the hearing officer's decision to deny Long's application for a disability annuity because he could perform past work is supported by substantial evidence in the record.* Therefore, the decision of the Railroad Retirement Board is
 
 
 19
 AFFIRMED.
 
 
 
 *
 The hearing officer correctly found that claimant was capable of performing work he had done in the past. Because this is a sufficient reason for denying claimant's application for a disability annuity, we do not reach the alternative grounds that the hearing officer discussed for denying claimant's application