ELIZABETH WHITE SIMS V. ESTATE OF
HENRY W. POWELL, DECEASED

4710                                432 S.W. 2d 838

Opinion Delivered October 28, 1968

*W. K. Grubbs Sr.* and *Samuel W. Barr* for appellant.

*Thomas L. Cashion* for appellee.

J. FRED JONES, Justice.    This is an appeal by Elizabeth Sims from a decree of the Chicot County Probate Court denying her petition for widow's allowance out of the estate of Henry W. Powell, deceased.    For brevity and convenience the parties will be referred to by their given names.

Henry and Elizabeth were married in Little Rock in 1912.    They lived together as husband and wife until 1926 when they separated.    One child, Samuel, was born of this union and after the separation both parties continued to live in Little Rock for a short time where

Henry worked as a brick mason. About two years after the separation Elizabeth returned to their former home town of Eudora in Chicot County and later moved to Detroit, Michigan where she married Robert Sims in 1932.

Henry continued his occupation as brick mason in Little Rock and Memphis, Tennessee, and later returned to Eudora where on May 15, 1934, he married Edna Johnson. Two children, Henry, Jr. and Delores were born of this marriage, and Henry and Edna lived together as husband and wife in Eudora until Henry died testate on September 30, 1966. Under the provisions of Henry's will, he nominated his wife Edna as executrix of his estate to serve without bond, and as to his first wife Elizabeth and his second wife Edna, the will provides as follows:

> "I give and bequeath to Elizabeth White Sims, whom I married in 1912, and who is living separate and apart from me, the sum of Five ($5.00) Dollars, to be paid out of my estate after the payment of my debts.

> "I give and bequeath to Edna E. Johnson Powell, whom I married in 1933 and who is at present living with me, the use of the home in which we now live and the property upon which it is located (namely Lot 1 Block 1 of East Side Addition to town of Eudora, Arkansas), said use to be for the remainder of her natural life or until she re-marries, whereupon it shall revert to my children H. W. Powell, Jr. and Delores Powell, said children being by her.

> "All the rest and residue of my estate, whether real, personal or mixed, I give, bequeath and devise to my son Henry Powell, Jr. and to my daughter Delores Joan Powell, said children being by my second wife Edna E. Powell . . . "

The will was admitted to probate and letters testamentary were issued to Edna. Elizabeth filed a petition for widow's allowance, renouncing her rights under the will and claiming under the statute, as the legal surviving spouse of the decedent.

From the evidence offered in support of the petition, the trial court found that Elizabeth had failed to sustain the burden of proof necessary to overcome the presumption of the validity of the decedent's marriage to Edna and the petition was dismissed. On appeal to this court, Elizabeth relies on the following point for reversal:

"The court's decision is against the uncontradicted evidence of no divorce and contrary to law."

We do not agree with appellant. A marriage conducted in legal form is presumed to be valid and the presumption stands until overcome by positive proof. In the 1915 case of *Estes* v. *Merrill*, 121 Ark. 361, 181 S.W. 136, speaking of marriage and the burden of proof required to overcome such presumption of validity, this court said:

"So strong is this presumption and the law is so positive in requiring the party who asserts the illegality of a marriage to take the burden of proving it, that such requirement obtains even though it involves the proving of a negative, and although it is shown that one of the parties had contracted a previous marriage, and the existence of the wife or husband of the former marriage at the time of the second marriage is established by proof, it is not sufficient to overcome the presumption of the validity of the second marriage, the law presuming rather that the first marriage has been dissolved by divorce, in order to sustain the second marriage."

In *Spears* v. *Spears*, 178 Ark. 720, 12 S.W. 2d 875, A. W. Spears and Lesser Lee were married in Florida in 1898. About two years after the marriage, Mr. Spears left Mrs. Speas and moved to Pensacola. He later moved to Arkansas and married Minnie Temple in 1909. After Minnie died in 1911, Spears married Roena Lyles in 1913 and they lived together as husband and wife until his death in 1925.

In an unsuccessful attempt to overcome the presumption of the validity of the two subsequent marriages, Lesser Lee Spears attempted to prove that Spears had never obtained a divorce from her. The facts in the *Spears* case are so near parallel with the facts in the case at bar, we quote rather extensively from the Spears decision, as follows:

> "The appellee knew of Spears' marriage for several years, but she did not notify the woman who was living with him that she was his wife, and never made any claim upon him, although she knew where he was, but claims that she burned the letters that she had received from Spears. The appellee's contention, however, is that Spears could not have obtained a lawful divorce except in Jackson or Escambia County, Florida, and that the proof showed that he did not obtain a divorce at either of these counties, and there can be no presumption that he attempted to unlawfully obtain a divorce from her.
>
> \* \* \*
>
> "Appellee testified that, after she and Spears were married in 1898, they lived together in Florida as husband and wife until the year 1900, when Spears went to Pensacola and began the practice of law there; that he practiced law there until the latter part of August or the first of September, 1902, when he left Pensacola and the State of Florida for no apparent reason, and without any notice or intimation to appellee that he intended to leave,

and without obtaining a divorce. That during the time he stayed at Pensacola he visited his wife and family at intervals, and frequently contributed to their support. While in Pensacola he stayed with appellee's brother most of the time. She also testified that she had given Spears no cause for divorce or for deserting her, and had never done any of the things for which a divorce might be granted in Florida; that she had never been summoned in any divorce case brought by Spears; that she had never filed any suit for divorce herself, and that she had at all times been ready to move to the residence of Spears, but that he requested her to wait until he got his business straight and he would send for her.

"The appellee has also proved that no divorce was granted in the county of Jackson or Escambia County, Florida, the only places where it is shown that Spears lived in Florida.

"The proof further shows that Spears went to Memphis and stayed a while, and also to Covington, and that no divorce was granted in either of those counties. The proof also shows that no divorce was granted in Jefferson County, Arkansas, and that no divorce was granted in St. Bernard Parish, Louisiana.

"Appellee contends that this overcomes the presumption that Spears' second marriages were innocent, because he could only have been absent or away from the places mentioned for a few months, and not long enough to establish a residence in any other State. *However, the proof does not show that Spears did not obtain a divorce in some county in Florida besides the one whose records were searched; it does not show that he did not get a divorce somewhere in Tennessee in some county other than Shelby or Tipton, and the proof does*

*not show that he did not get a divorce in some county in Arkansas.*

"While the law requires a residence in a State for a certain length of time, it is not required that the party bringing the suit reside in the county where he brings the suit for this length of time. One might reside in Jefferson, County, Arkansas, a year or more, and then establish a residence in Cleveland County, or some other county in Arkansas, where he could obtain a divorce, and then move his residence back to Pine Bluff. It is not at all impossible that he could do this without the people of Pine Bluff knowing anything about it or recalling it after so long a time. In fact, it appears very much more probable that he did something of this sort than that he would marry a woman in Pine Bluff, live with her as his wife, openly, raise children, and then, when she died, marry another woman publicly in Pine Bluff, Arkansas, and live with her many years, when, if he did not have a divorce, he would, of course, be guilty of a felony." (Emphasis supplied.)

In the case at bar the appellant knew that the decedent had married Edna Johnson; that they were living together and were raising a family at Eudora in Chicot County, Arkansas, where appellant's mother lived and where appellant visited. Appellant denies that she ever received any support from the decedent for herself or their child, although the child visited with its father. Appellant not only failed to make any claim on the decedent as her husband during his lifetime following their separation in 1926, she married Mr. Sims in 1932 prior to the marriage of the decedent to Edna, and she testified on this point as follows:

"Q. At the time that you married Robert Sims, was it you understanding that you were still married to Henry Powell?

A. No, I was the understanding that he told me that he was going to get divorced.

Q. He told you that he was going to get a divorce?

A. Yes.

Q. When did he tell you that?

A. Well, when we first separated. And, we never talked of it anymore. He told me that he was going to."

Apparently the appellant placed considerable confidence in the decedent's having obtained a divorce as he said he would do, because they discussed it no more and she married Mr. Sims with whom she is still living. The appellant knew of the decedent's second marriage and was bound to have known of the birth of his children by the second marriage, yet she made no claim as his lawful wife until after his death some forty years after their separation when he told her he was going to obtain a divorce. There is no evidence of anything, other than Henry's death, that ever caused appellant to believe that Henry had not obtained a divorce as he told her he would do.

Appellant denies that she was ever served with summons or notice in divorce proceedings. On the other hand she proved that a petition for divorce was filed and summons issued and served on two occasions in Pulaski County, but there was no record of a divorce decree having been entered in Pulaski County, Arkansas, Shelby County, Tennessee or Desha County, Arkansas. We also note, as the trial court did, that appellant did not testify that she had not obtained a divorce from the decedent herself before she married Sims.

We conclude that appellant's proof of her marriage to the decedent, together with her proof that no divorce decree appeared of record in Pulaski or Chicot Coun-

ties, Arkansas, or in Shelby County, Tennessee, falls far short of evidence sufficient to overcome the presumption of the validity of the decedent's subsequent marriage.

As was stated in *Lathan* v. *Lathan,* 175 Ark. 1037, 1 S.W. 2d 67:

> "[W]e feel justified in again stating the law to be that, where a second marriage is established in form according to law, a presumption arises in favor of its validity as against a former marriage, even though the husband or wife of the former marriage is living at the time, and that this presumption is not overcome by the presumption of law in favor of the continuance of the first marital relation, coupled with the testimony of the former spouse that he or she has not obtained a divorce, and has no information as to whether the other spouse had obtained a divorce, and the testimony of the clerk of the divorce court where the deceased spouse had some time lived, that no divorce had been granted such spouse in such court."

The decree of the probate court is affirmed.