**Everlene STOKES, Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Appellee.**

No. 85–1395.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 12, 1985.

Decided Sept. 26, 1985.

Bruce Harlan, Blytheville, Ark., for appellant.

Julie Simpson, Baltimore, Md., for appellee.

Before HEANEY, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Appellant Everlene Stokes (Everlene) appeals from the district court's affirmance of a final decision of the Secretary of Health and Human Services denying her claim for social security widow's benefits. The Secretary concluded that Everlene is not a surviving divorced wife of Bossie Stokes (Stokes) within the meaning of the Social Security Act's widow's benefits provisions, 42 U.S.C. §§ 402(e), 416(d), 416(h)(1)(A); and that Everlene therefore is not entitled to receive benefits on the basis of Stokes' earnings record. We reverse.

The record shows that Stokes married Ora Lee McCloud (McCloud) in May 1937. Although a child was born of the marriage, the couple separated sometime prior to 1942 and never lived together again.

Stokes remained in Arkansas; McCloud moved to other states.

In 1942, Stokes married Everlene in Blytheville, Arkansas. Prior to her marriage, Everlene had no knowledge of Stokes' 1937 marriage; when she learned about it shortly afterwards, Stokes told her that the marriage to McCloud had not been legal. Stokes filed for and obtained a divorce from McCloud in 1963, apparently at the urging of Everlene, who had been reminded of the 1937 marriage by news she had received that McCloud was having financial difficulties.

Everlene lived with Stokes in Arkansas from 1942 until 1972 and had eleven children by him, seven of whom lived. Everlene also raised Stokes' child by his first marriage to McCloud. Everlene divorced Stokes in 1972, but he returned to live with her in 1980 after he had fallen ill. He died in 1982, fully insured for purposes of social security insurance benefits. *See* 42 U.S.C. § 414(a). Everlene paid a portion of Stokes' medical and burial expenses. She subsequently filed a claim for social security widow's benefits, as did McCloud.

Under the Social Security Act, if a woman divorces a man after ten or more years of marriage and does not remarry, and if her ex-husband then dies fully insured, she may be entitled to receive widow's benefits on her ex-husband's earnings record upon reaching age sixty. 42 U.S.C. §§ 402(e), 416(d). The validity of the marriage for purposes of entitlement to widow's benefits is tested by state law. 42 U.S.C. § 416(h)(1)(A). Accordingly, the question Everlene presented to the Secretary and to the district court was whether she had been validly married to Stokes under the law of Arkansas.

As both the Secretary and the district court noted, Arkansas does not recognize common-law marriages. *United States v. White*, 545 F.2d 1129, 1130 (8th Cir.1976). In addition, a ceremonial marriage to a person who has previously been married and who has never obtained a divorce is void. *Bruno v. Bruno*, 221 Ark. 759, 762, 256 S.W.2d 341, 343 (1953). No court decree need be obtained to avoid the subsequent marriage. *Goset v. Goset*, 112 Ark. 47, 56, 164 S.W. 759, 762 (1914).

On the other hand, Arkansas law presumes that a ceremonial marriage is valid. *Higgins v. Higgins*, 266 Ark. 953, 956, 588 S.W.2d 454, 456 (Ark.App.1979); *Miller v. Miller*, 237 Ark. 66, 69, 371 S.W.2d 511, 513 (1963); *Missouri Pacific R.R. v. Harris*, 196 Ark. 974, 975, 120 S.W.2d 695, 696 (1938); *Brotherhood of Railroad Trainmen v. Merideth*, 146 Ark. 140, 147, 225 S.W. 337, 339 (1920). The burden of proving otherwise is on the party attacking the marriage; and the presumption is a strong one. *See Sims v. Powell's Estate*, 245 Ark. 493, 494, 432 S.W.2d 838, 840 (1968) ("positive proof" is necessary to rebut the presumption); *Blythe v. Blythe*, 241 Ark. 768, 410 S.W.2d 379 (1967) (burden of proof is difficult to satisfy); *Miller v. State*, 235 Ark. 880, 881, 362 S.W.2d 443, 444 (1962) ("no presumption is much stronger than the presumption that a marriage is lawful, innocent, and not criminal"); *Missouri Pacific R.R. v. Harris*, 196 Ark. 974, 976, 120 S.W.2d 695, 696 (1938) (rebuttal requires "clear and decisive evidence" divorce was not obtained prior to second marriage). A strong presumption that a valid marriage exists also arises when a man and woman have lived together for a considerable time and have held themselves out to the public as husband and wife, particularly if children have been born of the union. *Allen v. Wallis*, 279 Ark. 149, 650 S.W.2d 225 (1983). In such situations, even if a spouse from an earlier marriage is still living, Arkansas law presumes the earlier marriage ended in divorce, absent evidence to the contrary. *Coogler v. Dorn*, 231 Ark. 188, 191, 328 S.W.2d 506, 509 (1959); *Spears v. Spears*, 178 Ark. 720, 730–31, 12 S.W.2d 875, 878 (1928).

In *Missouri Pacific R.R. v. Harris, supra*, the Arkansas Supreme Court faced the issue of whether a "widow" to a second marriage was entitled to an award for the negligent death of her spouse, when she did not obtain a divorce decree for her first marriage until after entering into the sec-

ond marriage. The court held that she was so entitled, ruling that the second marriage was presumptively valid absent "clear and decisive evidence" to the contrary. Although the widow had not obtained a divorce decree until after entering into the second marriage, no "clear and decisive" evidence showed that her partner to the first marriage had not successfully sought dissolution before her subsequent remarriage. 196 Ark. at 975, 120 S.W.2d at 694–95. Under Arkansas law, therefore, the party contesting the validity of the second marriage must prove by "clear and decisive evidence" that the other partner to the first marriage had not received a divorce decree before the second marriage.

When the Arkansas holdings are applied to the present case, a presumption arises that the Stokes-McCloud marriage had ended in divorce by the time Stokes married Everlene in 1942. Although the Secretary concluded that this presumption had been rebutted by the proof Stokes divorced McCloud in 1963, we do not agree. Admittedly, the 1963 decree was evidence that Stokes had not obtained a divorce at some earlier time; on the other hand, we think the 1972 divorce decree obtained by Everlene was equally strong evidence of the validity of Everlene's 1942 marriage.[1] One of the two divorce decrees must have addressed a legal relationship that did not in fact exist at the time; but we see no reason to assume that the ineffective decree was the one obtained by Everlene, particularly because that 1972 decree recognizes the validity of the 1942 marriage between Everlene and Stokes and that seven children "were born of the marriage" and the parties owned property jointly as "husband and wife."

After reviewing the other evidence of record, we conclude the Secretary erred in determining that the 1942 marriage be-

tween Stokes and Everlene had been invalid. Although this court on review is bound by the Secretary's findings if they are supported by substantial evidence, 42 U.S.C. § 405(g), we are not similarly bound by her reading of the Arkansas law. Cf. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir.1982); Whaley v. Schweiker, 663 F.2d 871, 873 (9th Cir.1981). The evidence here was essentially nonconflicting and tended to support, rather than rebut, the strong presumptions arising under Arkansas law. For example, McCloud, as the first wife, has acknowledged that she did not live with Stokes after 1942. Everlene, on the other hand, lived with Stokes for over thirty years, bore him many children, and assumed responsibility for his medical and burial expenses. Stokes listed Everlene as his wife in a 1970 application he filed for food stamps. Moreover, even though McCloud testified in interrogatories that she and Stokes divorced under the 1963 decree, her further testimony that she remarried prior to 1963 undercuts any credibility that would require us to give binding and conclusive weight to the assertion that only the 1963 divorce decree existed. See Chandler v. Heckler, No. 85–1343, slip op. at 3 (8th Cir. Sept. 5, 1985) (construing Iowa law). The Secretary, therefore, did not prove the negative, as is required by Missouri Pacific R.R. v. Harris, supra, that Ora Lee McCloud did not obtain a divorce from Stokes prior to his marriage to Everlene.

In sum, the Secretary has failed to conclusively prove the negative of the proposition that the marriage of McCloud and Stokes did not end before the date of Stokes' second marriage to Everlene in 1942, notwithstanding the existence of a divorce decree in 1963 obtained by Stokes against Ora Lee. The evidence relied on by the Secretary was simply insufficient to

---

**1.** On brief, the Secretary attempts to discredit the 1972 divorce decree, noting that it apparently contains some factual inaccuracies. We find this argument unpersuasive, since the 1963 divorce decree, and indeed the 1937 marriage license, appear to contain similar inaccuracies. The Secretary also suggests that Stokes may not have been properly served in the divorce action. The decree states, however, that the Arkansas court had before it the "summons with return thereon," and that "the Defendant, Bossie Stokes, Jr., was served personally by the Sheriff."

satisfy the heavy burden of proof imposed under Arkansas law on one who would invalidate an apparently legal marriage.

We hold that Everlene's 1942 marriage to Stokes was valid. Accordingly, we reverse the decisions of the Secretary and district court, and remand the case to the Secretary so that she may determine whether Everlene meets the other requirements for entitlement to widow's benefits.[2] *See Smith v. Heckler,* 707 F.2d 1284 (11th Cir.1983).

---

**2.** Although *Grey v. Heckler,* 721 F.2d 41 (2d Cir.1983), is to the contrary, that case was decided under Illinois law where the presumption of validity of a second ceremonial marriage is not

as strong as in Arkansas, for in Illinois the party contesting the validity of a second marriage need not prove a negative. *Id.* at 45.