PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 7/8/96**

TENTH CIRCUIT

---

ROTH A. GATEWOOD,

      Petitioner,

vs.

RAILROAD RETIREMENT BOARD,

      Respondent.

No. 95-9537

---

APPEAL FROM THE RAILROAD RETIREMENT BOARD
(Agency Docket No. A-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)

---

Kevin M. Fowler of Frieden, Haynes & Forbes, Topeka, Kansas (Lynn S. McCreary and John C. Frieden of Frieden, Haynes & Forbes, Topeka, Kansas, with him on the brief), for Petitioner.

Thomas W. Sadler, Assistant General Counsel, Railroad Retirement Board (Catherine C. Cook, General Counsel, Stephen A. Bartholow, Deputy General Counsel, and Michael C. Litt, General Attorney, Railroad Retirement Board, with him on the brief), for Respondent.

---

Before EBEL, KELLY and HENRY, Circuit Judges.

---

KELLY, Circuit Judge.

---

      Petitioner Roth A. Gatewood appeals the decision of the Railroad Retirement

Board ("Board"), which affirmed on reconsideration the Board's initial decision to reject

appellant's claim for railroad service and compensation. The Board rejected appellant's claim that his records be corrected to reflect his service as an employee of the Atchison, Topeka and Santa Fe Railway ("ATSF") for the periods January 1, 1980 through December 31, 1987 and August 1, 1989 through November 31, 1992. The Board denied Mr. Gatewood eleven years and four months of credited railroad service for these periods under the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231-231v, dismissing his claim for the period January 1, 1980 through December 31, 1987 for untimely filing and denying his claim for the period August 1, 1989 through November 31, 1992 on the ground that Mr. Gatewood was an independent contractor rather than an employee. We affirm in part and reverse in part.

Background

Mr. Gatewood was hired as an attorney by the ATSF law office in Topeka, Kansas in 1962. In 1968, Mr. Gatewood was promoted to the position of Assistant General Attorney of ATSF, and in 1973, he was promoted to General Attorney of ATSF. On January 1, 1980, the personnel of the ATSF law department in Topeka were transferred from the ATSF payroll to the payroll of Santa Fe Industries, Inc., the parent company of ATSF. Mr. Gatewood remained in the same office after this transfer, and he performed the same duties as an attorney on behalf of ATSF as he had performed while on the ATSF payroll. Later, in January 1984, Santa Fe Industries was merged into the Santa Fe

- 2 -

Southern Pacific Company, and the legal personnel in the Topeka office were again transferred, this time to the payroll of Santa Fe Southern Pacific. Again, Mr. Gatewood and the rest of the legal staff at the Topeka office continued to provide legal services to ATSF in the state of Kansas. In March 1988, ATSF reestablished its law department, and Mr. Gatewood was transferred back to the ATSF payroll where he remained until he retired from ATSF in July 1989.

Following his retirement, Mr. Gatewood contracted to perform legal services for ATSF beginning on August 1, 1989. For the one-year term of the agreement, ATSF agreed to pay Mr. Gatewood $70 per hour subject to monthly billings, with a guaranteed minimum of 80 hours per month, for total guaranteed compensation of $67,200 for the contract period. The agreement stated that Mr. Gatewood would "perform these legal services as an independent contractor, i.e. an attorney in private practice, and not an employee of the Railway Company." Nevertheless, under the agreement, ATSF supplied Mr. Gatewood with secretarial service and reimbursed his reasonable travel expenses for trips away from Topeka. Moreover, while not provided under the agreement, ATSF supplied Mr. Gatewood with free office space during the period he worked under the contract. After the initial one-year contract term expired, Mr. Gatewood's arrangement with ATSF continued without a written extension through November 1992.

While working under contract for ATSF from August 1, 1989 through November 30, 1992, Mr. Gatewood operated as "of counsel" to a law firm in Wichita. Through this

arrangement, Mr. Gatewood was able to receive coverage under the firm's malpractice insurance policy, and the firm was able to create the appearance that it had an office in Topeka. However, throughout this period, Mr. Gatewood restricted his practice exclusively to matters involving the railway. He performed no services for the firm's other clients, he was not involved in the firm's operations, and he did not derive any income from the firm or share in the firm's expenses.

On February 22, 1993, Mr. Gatewood filed a claim under the Railroad Retirement Act for railroad service and compensation. The Board subsequently denied Mr. Gatewood's claim with respect to the periods at issue in this appeal. The Board dismissed Mr. Gatewood's claim for credit for the months of January 1980 through December 1987 on the ground that it was barred by the four-year statute of limitations in Section 9 of the Railroad Retirement Act, 45 U.S.C. § 231h. The Board denied Mr. Gatewood's claim for the months of August 1989 through November 1992 because it found he was an independent contractor and not a covered employee under the Railroad Retirement Act and the Railroad Unemployment Insurance Act. Subsequently, on Mr. Gatewood's motion for reconsideration, the Board affirmed its initial decision dismissing Mr. Gatewood's claims. This appeal followed.

## Discussion

This court has jurisdiction to review decisions of the Railroad Retirement Board

under 45 U.S.C. § 231g. That section incorporates the standard of review under the Railroad Unemployment Insurance Act, which states that "[t]he findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." 45 U.S.C. § 355(f). This court held long ago that the "judgments [of the Board] are final and conclusive if supported by substantial evidence and if free from arbitrary or capricious conduct." Utah Copper Co. v. Railroad Retirement Bd., 129 F.2d 358, 361 (10th Cir.), cert. denied, 317 U.S. 687 (1942). Our view of this standard has not changed. Once we determine that the Board's factual findings are supported by substantial evidence and its decision is not based on an error of law, our task is complete. Accord Bowers v. Railroad Retirement Bd., 977 F.2d 1485, 1488 (D.C. Cir. 1992).

## I.

We first address the issue of whether the Board's decision to reject Mr. Gatewood's claim to receive service credit for the eight years from January 1980 through December 1987 was based on substantial evidence and a proper interpretation of the applicable law. The Board claims that because Mr. Gatewood did not file his claim for railroad service until February 22, 1993, the four-year statute of limitations found in Section 9 of the Railroad Retirement Act, 45 U.S.C. § 231h, prevents Mr. Gatewood from compelling the Board to alter his service records for the months at issue.

Section 9 of the Railroad Retirement Act requires employers under the Act to file

with the Board returns of compensation for their employees.  45 U.S.C. § 231h.  The regulations promulgated under the Railroad Retirement Act require that employers must file these reports annually by the end of February of the year following that for which the report is made.  20 C.F.R. § 209.6(a).  Covered employees may bring any errors in the Board's records to the attention of the Board "within four years after the day on which return of the compensation was required to be made;" after such time, the Board's records "shall be conclusive."  45 U.S.C. § 231h.  After the four years expire, the Board is no longer required to alter its records in response to an employee complaint.  Pawelczak v. United States, 931 F.2d 108, 110 (D.C. Cir. 1991).

A.

Mr. Gatewood argues primarily that the four-year statute of limitations does not apply in this case because 45 U.S.C. § 231h by its language only applies to restrict protests regarding compensation, and not to the issue of service records.  See 45 U.S.C. § 231h.  We disagree.  While service is not explicitly mentioned in the statute, the terms "service" and "compensation" are closely interrelated throughout the Railroad Retirement Act and the regulations promulgated thereunder.  The statute defines "years of service" as "the number of years an individual as an employee shall have rendered service to one or more employers for compensation."  45 U.S.C. § 231(f)(1); see also 20 C.F.R. § 210.3(a) (defining a "reported month of service" as "any calendar month . . . for which an

- 6 -

employee receives compensation for services performed"). Similarly, "compensation" is defined as "any form of money remuneration paid to an individual for services rendered as an employee." 45 U.S.C. § 231(h)(1). Mr. Gatewood seeks to persuade the court that service is defined in terms of "payment" and not "compensation," citing the definition of "service" found at 20 C.F.R. § 210.2. Such an interpretation ignores the statutory and regulatory provisions cited above which clearly demonstrate that service and compensation are interrelated concepts.

Moreover, the regulations promulgated by the Board strongly suggest that contests regarding both service and compensation are subject to the four-year statute of limitations in 45 U.S.C. § 231h. While the statute only refers to "returns of compensation," it is clear from the regulations that the annual report provided by the employers is "an annual report of the creditable service and compensation of employees." 20 C.F.R. § 209.6(a) (emphasis added). This is obviously the same report that is discussed in 45 U.S.C. § 231h, and we are convinced that the four-year statute of limitations applies to any contests regarding errors in the annual report.

Mr. Gatewood also suggests that 20 C.F.R. § 210.7(g), which requires employers to retain original service records for five years after the due date of the report, "is certainly indicative of the Board's acknowledgment that contests relating to creditable railroad service are indeed not subject to the four year statute of limitations." Aplt. Br. at 11. What Mr. Gatewood obscures in his anaylsis is the fact that the five-year retention

requirement applies to both service and compensation records. 20 C.F.R. § 210.7(g).

Thus, viewed in light of the language of the regulations, Mr. Gatewood's reasoning

would suggest that even compensation records are not subject to the four-year limitations

period, which we know is not the case. More importantly, the document retention

policies required by the regulations need not correlate perfectly with the statutory

limitations period. Cf. Pawelczak, 931 F.2d at 110 (the Board can reopen its records on

its own initiative even after the four-year period).

B.

Mr. Gatewood argues in the alternative that even if § 231h does apply to service,

equitable principles compel the tolling of the statute. Mr. Gatewood first contends that,

even though he is an attorney, his lack of knowledge of the provisions of the Railroad

Retirement Act and the overall complexity of the statute warrant equitable tolling. Upon

our review of the record, it is apparent that Mr. Gatewood was in fact aware that he had

received no service credit under the Act and he was made aware of the procedures

available to contest his service records. Moreover, even if Mr. Gatewood was not

familiar with the intricacies of the Railroad Retirement Act, we are aware of no authority,

and Mr. Gatewood has cited to none, which suggests that ignorance of the law should

warrant equitable tolling of a statute of limitations. As the Supreme Court has stated:

> Federal courts have typically extended equitable relief only sparingly. We
> have allowed equitable tolling in situations where the claimant has actively

pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990) (footnotes and citations omitted).

Mr. Gatewood also asserts that the statute of limitations should be tolled because he faced "extraordinary circumstances" which prevented him from asserting his rights. Aplt. Br. at 17-18. Whether these "extraordinary circumstances" were Mr. Gatewood's lack of knowledge of the applicable law, as stated in his brief, or his concerns about asserting his claim in light of his employment situation, as reflected in the record, we are unpersuaded that they rise to the level required to warrant the extreme and limited remedy of equitable tolling. Mr. Gatewood was not misled in any way. We similarly find Mr. Gatewood's argument that the statute of limitations should be tolled to effectuate the "humanitarian purpose" of the Railroad Retirement Act to be devoid of any merit.

As a final point, Mr. Gatewood contends that we should order the Board to correct his service records beyond the limitations period because it is vested with the authority to do so. There is no doubt that the Board is vested with the authority to alter its records beyond the four-year period. However, this power in no way suggests that a failure to correct outdated records is an arbitrary act of discretion, as Mr. Gatewood suggests. In Pawelczak, the D.C. Circuit recognized the Board's authority to reopen records beyond

the limitations period but held:

> [T]he fact that the Board has the authority to reopen its records upon its own initiative does not mean that it can be required to do so. RRA section 9 expressly protects the Board from the continuing administrative burden of reopening records upon employee request beyond a four-year period.

Pawelczak, 931 F.2d at 110. We see no reason why this case warrants rejection of this clear rule; to order the Board to reopen Mr. Gatewood's service records would openly repudiate the Board's administrative authority.

## II.

We turn next to the Board's denial of Mr. Gatewood's claim for creditable service from August 1989 through November 1992. The Board denied Mr. Gatewood's claim for service for this period because it found that he "was an independent contractor rather than an employee as defined by the [Railroad Retirement Act] and the [Railroad Unemployment Insurance Act]." Aplt. App. at 12. After reviewing the record, we find that the Board's determination that Mr. Gatewood was an independent contractor is not supported by substantial evidence, and we reverse.

Under the Railroad Retirement Act, "employee" is defined as "any individual in the service of one or more employers for compensation." 45 U.S.C. § 231(b)(1)(i). The issue thus becomes whether Mr. Gatewood was "in the service of" ATSF. Under the Act:

An individual is in the service of an employer . . . if--

(i)(A) he is subject to the continuing authority of the employer to supervise

- 10 -

and direct the manner of rendition of his service, or (B) he is rendering professional or technical services and is integrated into the staff of the employer, or (C) he is rendering, on the property used in the employer's operations, personal services the rendition of which is integrated into the employer's operations; and

(ii) he renders such service for compensation . . . .

45 U.S.C. § 231(d)(1). The expansive language found in subsections (B) and (C) was added by amendment in 1946 for the purpose of bringing "a self-employed individual who was rendering service to a railroad under contract" within the definition of "employee" for purposes of the Act. Kelm v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 206 F.2d 831, 835 (8th Cir. 1953). The legislative history of the 1946 amendment explains how courts should determine if attorneys and other professionals are in fact "employees" for purposes of the Act:

> The realistic test of whether such personnel are employees is whether they are integrated into the employer's staff or are independent practitioners having the railroad as part of their clientele. The objective indicia bearing on that test would be whether they occupy railroad offices or maintain their own offices; whether they are paid a salary or are paid a fee or retainer; whether the railroad is entitled to make demands on them which the usual clientele of a professional man cannot make; whether they do only railroad work or carry on a substantial outside practice, etc.

S. Rep. No. 1710, Part 2 (Supplemental Report), 79th Cong., 2d Sess. 6 (1946).

Under this framework, it is clear from the record that Mr. Gatewood was indeed "in the service of" ATSF from August 1989 through November 1992. First, Mr. Gatewood occupied ATSF offices during this period; in fact, he remained in the same office and used the same ATSF furniture, fixtures, and support staff as he had used while

- 11 -

on the ATSF payroll. The record does not even suggest that Mr. Gatewood maintained any separate office space. Second, Mr. Gatewood's compensation arrangement with ATSF suggests an employer/employee relationship as well. While Mr. Gatewood was compensated on an hourly basis, the fact that ATSF guaranteed that he would receive a substantial minumum salary during the one-year term of the written agreement suggests that Mr. Gatewood was an employee under the Act. Third, while there is no direct evidence in the record of the degree of control ATSF had over the work performed by Mr. Gatewood, the fact that he worked exclusively for the railroad suggests, if anything, that he performed extensive work for ATSF as requested. Fourth, the record clearly reflects that Mr. Gatewood carried on no outside legal practice at all beyond his work for ATSF. It is evident from the record that Mr. Gatewood was acting as an employee in the service of a qualified employer during the period from August 1989 through November 1992.

The Board points to certain facts which it argues establish that Mr. Gatewood was not an employee as defined by the Act. Upon examination, however, the facts cited by the Board support no such determination. It is true that Mr. Gatewood's agreement with ATSF stated that he would act as an "independent contractor, i.e. an attorney in private practice, and not as an employee of the Railway Company." Aplt. App. at 4. However, merely to state that such a relationship exists does not necessarily make it so, especially in light of the abundant record evidence to the contrary. The Board also points to the fact that Mr. Gatewood associated himself with a private law firm as "of counsel" as evidence

that he was an employee of the law firm and not of ATSF. Once again, the record evidence is clear that Mr. Gatewood only associated himself with the firm as a matter of convenience. In practical terms, Mr. Gatewood had no working relationship with the firm; he derived no income from the firm, and he did no work for the firm's clients. During Mr. Gatewood's period of association with the firm, his working relationship with ATSF remained unchanged from the time when he had been directly on the ATSF payroll. We find that the Board's decision to deny Mr. Gatewood service for the period from August 1989 through November 1992 is not supported by substantial record evidence.

## Conclusion

Based on the foregoing reasons, we AFFIRM the Board's decision to dismiss Mr. Gatewood's claim for service for the period from January 1980 through December 1987. We REVERSE the Board's denial of Mr. Gatewood's claim to be credited with service for the period from August 1989 through November 1992.