**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BERTHA L. MATLOCK,

  Petitioner,

v.

RAILROAD RETIREMENT BOARD,

  Respondent.

No. 98-9502
(No. D-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)
(Petition for Review)

**ORDER AND JUDGMENT** *

Before **BALDOCK, EBEL,** and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  <u>See</u> Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9.  The case is

therefore ordered submitted without oral argument.

---

*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Bertha L. Matlock seeks review of the final decision of the Railroad Retirement Board (Board) denying her application for disabled widow's benefits. Because the Board's decision is supported by substantial evidence and is legally correct, we affirm.

Petitioner filed an application for disabled widow's insurance benefits under 45 U.S.C. § 231a(d) of the Railroad Retirement Act, on the account of the deceased wage earner, Joseph H. Matlock, who died on June 24, 1986. Petitioner claimed she was the widow of decedent, based on her marriage to him on August 27, 1970, or, in the alternative, that she and decedent had been married under the common law when he died. After denial of petitioner's application and request for reconsideration, a hearing officer determined that petitioner was not the legal widow of decedent. His conclusion rested on two findings: (1) petitioner's marriage to decedent was void because decedent was already married to Donna Matlock (formerly Waldon) at the time; and (2) even if the marriage had been valid, petitioner's subsequent marriages and that of decedent were presumed valid, including a presumption that the former marriages had been dissolved by divorce or death, and petitioner failed to rebut this presumption. The Board affirmed, and this petition for review followed.

Petitioner and decedent were both married on numerous occasions. Some of these marriages were valid, others were not. To decide this case, we set out the following chronology of relevant marriages and divorces:

September 30, 1955 – Donna Waldon was granted an interlocutory decree of divorce from Robert Waldon in California. The decree ordered that a final judgment be entered after expiration of one year from the date of entry of the interlocutory decree.

February 25, 1960 – Donna Waldon married decedent in Douglas County, Nevada.

April 13, 1962 – Donna Waldon and Robert Waldon were granted a final judgment of divorce in California.

August 27, 1970 – petitioner married decedent in Storey County, Nevada.

October 10, 1972 – petitioner and decedent were granted a decree of divorce in Tulsa County, Oklahoma.

February 27, 1973 – the divorce decree between petitioner and decedent was set aside in Tulsa County, Oklahoma, based on their reconciliation.

January 27, 1975 – petitioner married Gary Day in Washoe County, Nevada.

October 8, 1975 – decedent was granted a decree of divorce from Donna (Waldon) Matlock in Washoe County, Nevada.

June 25, 1976 – Gary Day was granted a decree of divorce from petitioner in Washoe County, Nevada.

December 9, 1977 – decedent married Amalia Norris in Washoe County, Nevada.

October 2, 1980 – petitioner married Lawson Herring in Sebastian County, Arkansas.

February 17, 1982 – Amalia (Norris) Matlock was granted a divorce from decedent in Washoe County, Nevada.

May 22, 1984 – Lawson Herring was granted a decree of divorce from petitioner in Tulsa County, Oklahoma.

June 24, 1986 – decedent died in Nevada.

February 27, 1987 – Donna (Waldon) Matlock obtained an amended divorce decree from Robert Waldon in California, declaring the divorce to be effective as of September 1, 1956, nunc pro tunc.

To determine an applicant's eligibility for railroad retirement benefits, the Railroad Retirement Act incorporates several provisions of the Social Security Act. See 45 U.S.C. § 231a(d)(1), (4) (incorporating the definition of a "widow" and the rules for determining whether an applicant is the deceased employee's widow). Under the provisions relevant to this case, petitioner is decedent's "widow" if "she was married to him for a period of not less than nine months immediately prior to the day on which he died." 42 U.S.C. § 416(c)(5). Her status is to be determined by examining whether the courts of the state in which decedent was domiciled when he died, in this case Nevada, would find that petitioner and decedent were validly married when he died. See 42 U.S.C. § 416(h)(1)(a)(i).

Petitioner argues the Board's findings regarding the validity of her marriage to decedent were erroneous because (1) Donna Waldon was not yet divorced when she married decedent, and thus their marriage was void under Nevada law, which meant that petitioner's marriage to decedent was valid; and

(2) petitioner rebutted the presumption that the subsequent marriages were valid by showing that she and decedent had not been divorced.  Petitioner argues also that the hearing officer and Board erred in ignoring her evidence that she was married to decedent under Oklahoma common law between the spring of 1985 and the date of decedent's death.

We have jurisdiction to review decisions of the Railroad Retirement Board pursuant to 45 U.S.C. § 231g.  That section incorporates the standard of review under the Railroad Unemployment Insurance Act, which states that "[t]he findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive."  45 U.S.C. § 355(f).  This court has emphasized the limited nature of our review, noting that "[o]nce we determine that the Board's factual findings are supported by substantial evidence and its decision is not based on an error of law, our task is complete."  Gatewood v. Railroad Retirement Bd., 88 F.3d 886, 888 (10th Cir. 1996).

We need not determine whether petitioner's marriage to decedent was valid because, even assuming it was, substantial evidence supports the Board's finding that petitioner failed to rebut the presumption of validity regarding her subsequent marriages and that of decedent.  Nevada affords a strong presumption of validity to subsequent marriages.  "'When there has been a formal marriage, according to legal requirements, the law will presume the competency of the parties to enter

into the marriage contract, and will presume that any former marriage of either of the parties was dissolved by death or divorce.'" Villalon v. Bowen, 273 P.2d 409, 413 (Nev. 1954) (quoting Aguirre v. Aguirre (In re Aguirre's Estate), 62 P.2d 1107, 1109 (Nev. 1936)); see Ponina v. Leland, 454 P.2d 16, 20 (Nev. 1969) (noting strong public policy in Nevada favoring marriage, so that "'a marriage will, if possible, be upheld as valid and . . . its validity will be presumed unless disproved'") (quoting 35 Am. Jur. Marriage, Sec. 3, p. 181); Parker v. De Bernardi, 164 P. 645, 650 (Nev. 1917) ("The presumption in favor of a valid marriage has been declared to be one of the strongest known to the law. . . . [C]ommon law presumes . . . every marriage legitimate until the contrary is shown"). The burden of disproving the presumption that her former marriage ended in divorce is on petitioner. See Aguirre, 62 P.2d at 1108-09; De Bernardi, 164 P. at 647 ("When a marriage has been shown . . . the law raises a strong presumption of its legality -- not only casting the burden of proof on the party objecting, but requiring [her] throughout, in every particular, to make plain, against the constant pressure of this presumption, . . . that it is illegal and void.") (quotations omitted).

Here the record supports the Board's conclusion that petitioner failed to rebut the presumption. Petitioner's evidence that her initial divorce from decedent was set aside did not negate the possibility that decedent obtained a

divorce from her at a later date. This is especially true in light of Nevada law permitting ex parte divorces, and evidence that petitioner lived outside the state after she and decedent had allegedly reconciled. Decedent's marriage to Amalia Norris after this purported reconciliation also provides evidence that he obtained a divorce from petitioner at some point. In addition, in petitioner's marriage license application for her marriage to Lawson Herring, she swore under oath that she was single, unmarried, and could legally contract for and join in the marriage. Petitioner's failure to disprove that decedent divorced her before either of them remarried, together with evidence that both decedent and petitioner believed themselves free to remarry, provides substantial evidence for the Board's factual finding that petitioner failed to rebut the presumption of validity. See Villalon , 273 P.2d at 413 (upholding factual finding that presumption rebutted based on former husband's affidavit that he never divorced claimant, and noting that presumption may have proven decisive had former husband's existence or whereabouts been unknown).

This conclusion is buttressed by an examination of petitioner's last marriage, which took place in Arkansas. The general rule is that

> A marriage which satisfies the requirements of the state where the marriage was contracted will everywhere be recognized as valid unless it violates the strong public policy of another state which had the most significant relationship to the spouses and the marriage at the time of the marriage.

Restatement (Second) Conflict of Laws, § 283(2) (1971).  Nevada appears to follow this rule.    See Orr v. Bowen , 648 F. Supp. 1510, 1511 (D. Nev. 1986) (construing Nevada law to recognize validity of common law marriages legally contracted in other states despite nonrecognition of such marriages contracted within its borders).

Under Arkansas law, the presumption of validity afforded to subsequent marriages is extremely strong, and may only be disproved by negating every possibility that either spouse obtained a divorce.        See, e.g. , Stokes v. Heckler , 773 F.2d 990, 991-93 (8th Cir. 1985) (holding, as a matter of law, "heavy burden of proof imposed under Arkansas law" not satisfied in absence of "clear and decisive evidence" showing that former spouse did not obtain divorce from the deceased before he remarried);   Sims v. Estate of Powell   , 432 S.W.2d 838, 841-42 (Ark. 1968) (holding spouse attacking subsequent marriage and showing absence of divorce in places where decedent lived failed to negate possibility that decedent obtained divorce in some other place);     Clark v. Clark , 719 S.W.2d 712, 714 (Ark. Ct. App. 1986) (holding spouse's testimony that he did not obtain divorce did not negate presumption that his former spouse had done so).  Applying this law, it is clear that petitioner's evidence failed to rebut the presumption that her Arkansas marriage was valid because her former marriage had terminated in divorce.

Finally, we conclude the Board did not err in failing to rule on petitioner's claim of an Oklahoma common law marriage with decedent, as she abandoned this argument by not raising it either to the hearing officer, see R. at 165, 176-77, or to the Board, id. at 8. See James v. Chater, 96 F.3d 1341, 1343-44 (10th Cir. 1996) (holding issues omitted from administrative appeal are deemed waived); Rivera-Zurita v. INS, 946 F.2d 118, 120 n.2 (10th Cir. 1991) (holding failure to raise issue on appeal to Board was failure to exhaust administrative remedies, precluding review).

Even if we were to address the common law claim on the merits, we would conclude as a matter of law that petitioner's evidence was not "clear and convincing" regarding the four elements to be shown: an actual and mutual agreement to be husband and wife; a permanent relationship; an exclusive relationship, proved by cohabitation as man and wife; and the parties' holding out of themselves as man and wife. See Boyd v. Monsey Constr. Co. (In re Boyd), 959 P.2d 612, 614 (Okla. Ct. Civ. App. 1998). Although petitioner's evidence showed episodic holding out as man and wife, it was insufficient to establish the first three elements required by the common law of Oklahoma.

The decision of the Railroad Retirement Board is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge